AQUILINO ET AL., DOING BUSINESS AS HOME
MAINTENANCE CO., ET AL. *v.*
UNITED STATES ET AL.

No. 1.   Argued October 15, 1959.—Decided June 20, 1960.

*Charles S. Friedman* argued the cause for petitioners. With him on the brief was *Harold M. Edwards.*

*Howard A. Heffron* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice, A. F. Prescott* and *Myron C. Baum.*

Mr. Chief Justice Warren delivered the opinion of the Court.

In this case we are asked to determine which of two competing claimants—the Federal Government by virtue of its tax lien, or certain petitioning subcontractors by virtue of their rights under Section 36-a of the New York Lien Law—is entitled to a sum of money owed under a general construction contract which was performed by the taxpayer.

The taxpayer, Fleetwood Paving Corporation, is a general contractor, which in July or August 1952, agreed to remodel a restaurant belonging to one Ada Bottone, herein referred to as the owner. The petitioners in August and September of that year entered into a subcontract with the taxpayer to supply labor and materials for the remodeling job. Shortly thereafter, the petitioners performed their obligations under the subcontract, but were not fully compensated by the contractor-taxpayer. Therefore, on November 3, 1952, and on November 10, 1952, they filed notices of their mechanic's liens on the owner's realty in the office of the Clerk of Westchester County. In June 1953, they instituted actions in the New York Supreme Court to foreclose those liens.

By order of court, the owner was permitted to deposit with the Clerk of the court the $2,200 which she still owed under the original construction contract, and she was thereafter dismissed as a defendant in the action. The Government, having previously levied upon the owner's alleged indebtedness to the taxpayer, was permitted by the court to enter the case as a party defendant.

The Government asserted precedence over the claims of petitioners because of the following facts: The Director of Internal Revenue in December 1951 and March 1952 received assessment lists containing assessments against the taxpayer for unpaid federal withholding and social security taxes. On October 31, 1952, the Director filed a

notice of federal tax liens in the office of the Clerk of the City of Mount Vernon, New York, which is the city wherein the taxpayer maintained its principal place of business. The Government claimed priority for its tax lien under Sections 3670 and 3671 of the Internal Revenue Code of 1939.[1] The petitioners contended that since the contractor-taxpayer owed them more than $2,200 for labor and materials supplied to the job, under the New York Lien Law, Section 36–a,[2] he had no property interest in

---

[1] Section 3670:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 3671:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

These provisions also appear in the 1954 Code. Int. Rev. Code of 1954, §§ 6321, 6322.

[2] McKinney's N. Y. Laws, Lien Law (1958 Supp.), § 36–a, provides as follows:

"The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law. Such trust may be enforced by civil action maintained as provided in article three-a of this chapter by any person entitled to share in the fund, whether or not he shall have filed, or had the right to file, a notice of lien or shall have recovered

the $2,200 which the owner still owed under the original remodeling contract.

The New York Supreme Court, Special Term, 140 N. Y. S. 2d 355, granted petitioners' motion for summary judgment. The ground for the decision was that the Government's tax lien was ineffective since it had not been filed in the office designated by New York law for the filing of liens against realty. On appeal, the Appellate Division affirmed, but on the ground that there was no debt due from the owner to the taxpayer to which the Government's lien could attach, 2 App. Div. 2d 747, 153 N. Y. S. 2d 268. The court reasoned that the fund deposited by the owner was a substitute for her realty to which the mechanic's liens had attached; and that since the Government had no lien on the owner's property, it could have no lien on the fund substituted for that property. On appeal, the New York Court of Appeals held that the tax lien had taken effect prior to the petitioners' claims. It therefore reversed the lower New York courts, and ruled that the motion of the United States for summary judgment, rather than that of petitioners, should have been granted by the Supreme Court, Special Term. 3 N. Y. 2d 511, 146 N. E. 2d 774. We granted certiorari, 359 U. S. 904.

The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts

a judgment for a claim arising out of the improvement. For the purpose of a civil action only, the trust funds shall include the right of action upon an obligation for moneys due or to become due to a contractor, as well as moneys actually received by him."

Section 36–a was repealed on September 1, 1959. N. Y. Laws 1959, c. 696, § 14. The subject matter covered by § 36–a is now included in McKinney's N. Y. Laws, Lien Law (1959 Supp.), §§ 70, 71.

must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute." [3] *Morgan* v. *Commissioner,* 309 U. S. 78, 82. Thus, as we held only two Terms ago, Section 3670 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law . . . ." *United States* v. *Bess,* 357 U. S. 51, 55.[4] However, once the tax lien has attached to the

---

[3] It is suggested that the definition of the taxpayer's property interests should be governed by federal law, although supplying the content of this nebulous body of federal law would apparently be left for future decisions. We think that this approach is unsound because it ignores the long-established role that the States have played in creating property interests and places upon the courts the task of attempting to ascertain a taxpayer's property rights under an undefined rule of federal law. It would indeed be anomalous to say that the taxpayer's "property and rights to property" included property in which, under the relevant state law, he had no property interest at all.

[4] It is said that because of the unique circumstances which existed in *Bess,* that case does not control here. However, aside from the fact that *Bess* involved proceeds payable under an insurance policy, whereas this case involves proceeds payable under a construction contract, it is apparent that the relevant circumstances of the two cases are essentially identical. In both cases the Government was attempting to assert its tax lien against what it thought to be the "property and rights to property" of the taxpayer. In both cases an adverse party claimed the right to the property in question on the theory that the taxpayer had never acquired a state-created property interest to which the Government's tax lien could attach. Finally, in both cases, the Government attempted to characterize the problem as one involving a conflict between competing claimants to be settled solely by the application of federal law.

*Bess* held that state law determines the property interests of a taxpayer in the cash surrender value of an insurance policy, as well as in the proceeds payable upon death. The same considerations which led to our conclusion in *Bess* require that we look to state law in determining the general contractor's property interests in this case.

taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property."[5] *United States v. Vorreiter,* 355 U. S. 15, reversing 134 Colo. 543, 307 P. 2d 475; *United States v. White Bear Brewing Co.,* 350 U. S. 1010, reversing 227 F. 2d 359; *United States v. Colotta,* 350 U. S. 808, reversing 224 Miss. 33, 79 So. 2d 474; *United States v. Scovil,* 348 U. S. 218; *United States v. Liverpool & London & Globe Ins. Co.,* 348 U. S. 215; *United States v. Acri,* 348 U. S. 211; *United States v. City of New Britain,* 347 U. S. 81; *United States v. Gilbert Associates,* 345 U. S. 361; *United States v. Security Trust & Sav. Bank,* 340 U. S. 47; *Illinois v. Campbell,* 329 U. S. 362; *United States v. Waddill, Holland & Flinn, Inc.,* 323 U. S. 353. The application of state law in ascertaining the taxpayer's property rights and of federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles. This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes.

Petitioners contend that the New York Court of Appeals did not make its determination in the light of these settled principles. Relying upon the express lan-

---

[5] It is suggested that the rule announced by *Bess* and applied in this case is inconsistent with the mandate that federal law governs the relative priority of federal tax liens and state-created liens. However, we fail to perceive wherein lies the inconsistency. It is one thing to say that a taxpayer's property rights have been and should be created by state law. It is quite another thing to declare that in the interest of efficient tax administration one must look to federal law to resolve the conflict between competing claimants of the taxpayer's state-created property interests.

guage of Section 36–a of the Lien Law and upon a number of lower New York court decisions interpreting that statute, petitioners conclude that the money actually received by the contractor-taxpayer and his right to collect amounts still due under the construction contract constitute a direct trust for the benefit of subcontractors, and that the only property rights which the contractor-taxpayer has in the trust are bare legal title to any money actually received and a beneficial interest in so much of the trust proceeds as remain after the claims of subcontractors have been settled. The Government, on the other hand, claims that Section 36–a merely gives the subcontractors an ordinary lien, and that the contractor-taxpayer's property rights encompass the entire indebtedness of the owner under the construction contract.

This conflict should not be resolved by this Court, but by the highest court of the State of New York. We cannot say from the opinion of the Court of Appeals that it has been satisfactorily resolved.[6] We find no discussion in the court's opinion to indicate the nature of the property rights possessed by the taxpayer under state law. Nor is the application to be made of federal law clearly defined. We believe that it is in the interests of all concerned to have these questions decided by the state courts of New York. We therefore vacate the judgment

---

[6] Subsequent to the Court of Appeals' decision in the instant case, and after this Court's decision in *United States* v. *Bess,* 357 U. S. 51, the New York Court of Appeals decided the case of *In re City of New York,* 5 N. Y. 2d 300, 157 N. E. 2d 587, pending on petition for a writ of certiorari *sub nom. United States* v. *Coblentz,* No. 259, this Term [*post,* p. 841]. The *Coblentz* case is not authority for the disposition of the instant case. The latter involves a determination of property rights under § 36–a of the New York Lien Law, whereas the *Coblentz* case was concerned with the taxpayer's property interests under an assignment contract, § 475 of the New York Judiciary Law, and § B15–37.0 of the New York City Administrative Code.

of the Court of Appeals, and remand the case to that court so that it may ascertain the property interests of the taxpayer under state law and then dispose of the case according to established principles of law.

*Vacated and remanded.*

Mr. Justice Harlan, dissenting in Nos. 1 and 23.[*]

I am unable to subscribe to the reasoning which underlies the Court's disposition of these cases. By holding that they both turn on whether the taxpayer had "property" under state law to which the Government's lien could attach, the Court has sanctioned a result consistently prohibited by us in a line of cases dealing with the priority of federal tax liens.[1]

In both cases, the delinquent taxpayer is a defaulting general contractor whose subcontractors remain unpaid. The Government's lien is asserted against the chose in action which the general contractor allegedly holds against the owner of the real estate on which the improvements were made, in respect of amounts due from the owner under the construction contract. If the subcontractors had sought to enforce their claims by imposing a lien on that chose in action, there is no question that the Government's lien would prevail. Under the decisions of this Court cited in note 1, *supra,* a federal tax lien asserted

---

[*][No. 23 is *United States* v. *Durham Lumber Co. et al., post,* p. 522.]

[1] *United States* v. *Security Trust & Savings Bank,* 340 U. S. 47 (1950); *United States* v. *City of New Britain,* 347 U. S. 81 (1954); *United States* v. *Acri,* 348 U. S. 211 (1955); *United States* v. *Liverpool & London Globe Ins. Co., Ltd.,* 348 U. S. 215 (1955); *United States* v. *Scovil,* 348 U. S. 218 (1955); *United States* v. *Colotta,* 350 U. S. 808 (1955); *United States* v. *White Bear Brewing Co.,* 350 U. S. 1010 (1956); *United States* v. *Vorreiter,* 355 U. S. 15 (1957); *United States* v. *Ball Construction Co., Inc.,* 355 U. S. 587 (1958); *United States* v. *Hulley,* 358 U. S. 66 (1958).

against a taxpayer's property under §§ 3670 and 3671 of the Internal Revenue Code of 1939[2] prevails over all other claims against such property except (1) those which attach and become "choate" before the federal lien attaches, and (2) those specifically protected by § 3672 (a).[3] It is conceded that the interests of the subcontractors in the present cases are not protected by § 3672 (a) and would not be considered choate under the applicable decisions. See *United States* v. *Kings County Iron Works*, 224 F. 2d 232 (C. A. 2d Cir. 1955).

The Court believes, however, that the present cases are different, because under state law, the general contractor in *Aquilino* held his claim against the owner in trust for the subcontractors to the extent of their claims, and because the subcontractors in *Durham Lumber* were given, to the extent of their claims, a direct right of action against the owner in respect of his debt to the general contractor, and that in these circumstances the rights of the subcontractors in the owner's debt are superior to those of the general contractor. It is said that, to the extent of the subcontractors' claims, the general contractor, under state law, thus had no "property" interest in the amounts due him from the owner, and that under the principles enunciated in *United States* v. *Bess*, 357 U. S. 51, a federal tax lien can attach only to a property interest which exists under state law.

---

[2] The text of these sections, applicable in the *Aquilino* case, are set forth in note 1 of the Court's opinion in No. 1, *ante*, p. 511. The comparable provisions of the Internal Revenue Code of 1954, §§ 6321 and 6322, applicable in the *Durham Lumber* case, are printed in notes 1 and 2 of the Court's opinion in No. 23, *post*, p. 524.

[3] That section, as amended, provides: "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector . . . ." 53 Stat. 882. The comparable provision of the Internal Revenue Code of 1954 is § 6323 (a).

I cannot see how it makes any difference, for purposes of the federal tax-lien statute, whether state law purports to prefer subcontractors over the general contractor and parties claiming through him by giving the subcontractors a lien on the general contractor's right of action against the owner or by giving them a prior right to collect the debt itself. In both instances, the owner is under a contractual duty to pay the general contractor and the latter is under a contractual duty to pay the subcontractors. In both instances, the subcontractors are attempting to satisfy their claims against the general contractor. And in both instances, they are seeking to satisfy themselves by claiming precisely the same thing—a prior right in the proceeds of the debt which arises by virtue of the contractual relationship between the owner and the general contractor.[4] In neither instance can the subcontractors collect more than that to which the subcontract entitles them, and in neither can the owner be required to pay more than that to which the main contract obligates him. If federal law requires that subordination of the general contractor's interest be ignored in the one instance, it does so equally in the other.

---

[4] It is noteworthy that the North Carolina law involved in the *Durham Lumber* case requires the general contractor to furnish the owner with a statement of subcontractors' claims "before receiving any part of the *contract price, as it may become due*," and that it is thereafter the duty of the owner to retain an appropriate amount "from the money *then due the contractor*." N. C. Gen. Stat., 1950, § 44-8. (Emphasis added.) Although this section indicates that the general contractor has no right to collect the proceeds of the main contract until the statutory conditions are satisfied, it obviously recognizes the owner's contractual obligation as the real basis of the transaction and the source of the subcontractors' rights. The subcontractors' claims are thus not akin to liens on the owner's real estate, as this Court suggests, but are asserted solely in respect of the monetary claim held by the general contractor against the owner.

The *Bess* case does not require a contrary conclusion. That case held only that while a federal tax lien attached to the cash surrender value of a life insurance policy owned by the taxpayer, it did not attach to the proceeds paid on his death, because under state law he had no right to such proceeds during his life. There was no reason under those circumstances why state property concepts should not control. To read that case as standing for the proposition that such concepts must also be controlling in cases such as these defeats the rule that "[t]he relative priority of the lien of the United States for unpaid taxes is . . . always a federal question to be determined finally by the federal courts." *United States* v. *Acri,* 348 U. S. 211, 213. It is one thing to say, as the Court did in *Bess,* that the federal interest in uniform application of federal tax liens does not require, as a general rule, that state property concepts be disregarded. It is quite another to permit such concepts to control the extent of a federal lien's application in situations indistinguishable from those where the Court has in fact, rightly or wrongly, enforced a uniform federal rule. Given federal supremacy in this field, it surely cannot be that the federal courts may not appraise for themselves the true impact of state-created rights upon the priority of federal tax liens within the criteria established by this Court. Cf. *Carpenter* v. *Shaw,* 280 U. S. 363, 367; *City of Detroit* v. *Murray Corporation,* 355 U. S. 489, 492. To recognize the substantial equivalence of the situations is not to create a new rule of federal property law but to require an evenhanded application of an already established one. It seems to me that Judge Fuld of the New York Court of Appeals was quite right in holding in the *Aquilino* case that New York could not, consistently with the past decisions of our Court, defeat the otherwise superior federal lien upon the owner's debt to the general

contractor by converting the debt into a trust for the benefit of the subcontractor.[5]

To read *Bess* as the Court does can only lead to confusion in the administration of the federal tax-lien statute. A taxpayer's property in a debt is surely diminished by the imposition of a lien on his interest, for he has no right to collect the liened portion nor to alienate it. Yet in precisely this situation, we have held that the federal tax lien is not affected by such diminution. *United States v. Liverpool & London Globe Ins. Co.,* 348 U. S. 215. If this holding is to be preserved after today's decision, subsequent cases must turn on the elusive distinction between diminishing a greater property interest and initially conferring a lesser one.[6] The very difficulty

---

[5] "It is, by now, exceedingly well settled that no state-created rule may defeat the paramount right of the United States to levy ·and collect taxes uniformly throughout the land. (See *United States v. Vorreiter,* 355 U. S. 15, revg. 134 Col. 543; *United States v. White Bear Brewing Co.,* 350 U. S. 1010, revg. 227 F. 2d 359; *United States v. Colotta, supra,* 350 U. S. 808, revg. 224 Miss. 33; *United States v. Scovil, supra,* 348 U. S. 218, 220–221; *United States v. New Britain, supra,* 347 U. S. 81, 84–87; *United States v. Kings County Iron Works, supra,* 224 F. 2d 232, 237). That being so, it follows that the provision in this state's Lien Law, to which respondents point—that funds received by a contractor from the owner for the improvement of real property shall be deemed 'trust funds' for the payment of subcontractors (§ 36–a; § 13, subd. [7])—may not be construed to affect the rights of the government or the priority of its tax lien." 3 N. Y. 2d, at 516, 146 N. E. 2d, at 777–778.

[6] It will not do to distinguish the present type of case from the lien-priority cases on the ground that in the latter cases the taxpayer remains the owner in a very real sense and can continue to enjoy the property if he discharges the debt it secures. In both instances, the taxpayer is temporarily deprived of certain incidents of ownership as a device for securing the payment of a debt, and is restored to the full enjoyment of the property only when the debt is discharged. And it is illusory to say that ownership of a debt which can be neither collected nor alienated is any more "real" than the ownership of no debt at all. Whether the diminution of the tax-

which this Court experiences in trying to determine whether under New York law the general contractor really holds only a bare legal title in trust for the subcontractors or has full ownership of the debt subject to a lien in favor of the subcontractors demonstrates the futility of attempting to draw such distinctions for federal purposes. I venture to suggest that on remand, the Court of Appeals can with equal facility label the subcontractors' interests "property" or a "lien," the relevant incidents of the relationship being the same in either case. Why should not that court and the legislatures of other States readily respond in choosing the former alternative?

I would affirm the judgment in No. 1, and would reverse in No. 23 on the ground that North Carolina can under no circumstances accord subcontractors a right in the proceeds of the debt arising from the construction contract superior to the Government's lien without satisfying one of the two requirements laid down by federal law. If the federal standard of choateness is thought to be an undesirable restriction on the States' freedom to regulate property relationships, the cases establishing that standard should be expressly overruled and not emasculated by dubious distinctions.

MR. JUSTICE BLACK, while adhering to the dissenting views expressed by him in *Commissioner* v. *Stern*, 357 U. S. 39, 47, and *United States* v. *Bess*, 357 U. S. 51, 59, concurs in this opinion.

---

payer's interest is sufficiently definite and complete to conclude the federal lien is precisely the question on which this Court has held federal law must control. It is admitted that, if the federal standard of "choateness" developed by this Court in the lien-priority cases is applied, the incidents of ownership retained by the taxpayers here must in fact be deemed greater than those retained by taxpayers in cases where state-created liens imposed on their interests have prevailed over the Government's lien.