Russell TERNS, Plaintiff,

v.

Kenneth J. WHISPELL and Louise Sel-
derbeck, Defendants.

UNITED STATES of America,
Plaintiff-in-Intervention,

v.

Russell TERNS, Kenneth J. Whispell and
Louise Selderbeck, Defendants.

United States District Court
S. D. New York.
March 16, 1964.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, for United States of America, Philip H. Schaeffer, Asst. U. S. Atty., of counsel.

Richter & Werbalowsky, Kingston, N. Y., for Russell Terns.

DAWSON, District Judge.

On or about October 5, 1962, Russell Terns (hereinafter referred to as "Terns"), a subcontractor, brought suit in the New York Supreme Court against Kenneth J. Whispell (hereinafter referred to as "Whispell"), Terns' contractor, and Louise Selderbeck (hereinafter referred to as "Selderbeck"), the property-owner for whom certain work had been done.[1] Thereafter, on or about November 21, 1962 the action was removed by the United States to the United States District Court for the Southern District of New York.

The action now comes before this Court on cross-motions seeking orders under Rule 56 of the Rules of Civil Procedure for summary judgment on the ground that there are no material issues of fact and that each party is, respectively, entitled to judgment as a matter of law. The competing claims of the subcontractor and of the United States are founded respectively on Section 36-a of the New York Lien Law and Section 6321 of the Internal Revenue Code of 1954.

*The Facts*

The material facts are not in dispute. They are as follows:

1. In July 1957, Whispell entered into a contract under which he agreed to do certain work for Selderbeck.

---

1. The United States was also joined in this initial action as a defendant. However, the action was dismissed against the United States by stipulation so ordered on August 9, 1963 and the United States then re-entered the action as plaintiff in intervention on August 12, 1963.

2. Thereafter Terns was engaged by Whispell for the Selderbeck job.

3. Work was completed on the Selderbeck job in January 1958.

4. Somewhat over a month later, on March 4, 1958, federal withholding taxes were assessed against Whispell in the amount of $5,285.63. A further assessment of $250.53 was made on May 16, 1958. Notice of tax liens for each assessment was filed on March 7 and August 29, 1958, respectively.

5. On or about March 10, 1958, the Internal Revenue Service served a levy upon Selderbeck for the debt owed by her to Whispell.

6. On March 22, Whispell filed a voluntary petition in bankruptcy. During the course of that proceeding the Referee in his report recommended that the claim against Selderbeck be abandoned to the Director of Internal Revenue. The Referee's report was confirmed on August 1, 1962.

7. Terns' complaint, dated October 5, 1962, alleges that the sum of $2,120 is due Terns from Whispell.

8. In an affidavit submitted by her attorney it is admitted that Selderbeck "owes someone the sum of $1,646.89."

9. The United States intervened in this action and demanded, in its complaint, "the sum of $1,517.82 plus interest and statutory thereon according to law." (Sic).

### The Applicable Law

Sections 6321 and 6322 of the Internal Revenue Code of 1954 create a lien for unpaid taxes which runs in favor of the United States upon *all property and rights to property belonging to the taxpayer at the time an assessment for taxes due is made*. The lien arises upon failure to pay taxes due after demand and relates back to the date of assessment. 26 U.S.C. §§ 6321, 6322.

The pertinent portions of the tax lien statute read as follows:

"§ 6321. Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"6322. Period of Lien.

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

Once the federal tax lien attaches, competing claimants have to satisfy vigorous federal tests if they are to obtain priority over the Section 6321 tax lien which is often reinforced by the federal government's priority in insolvency. Section 3466 of the Revised Statutes. See United States v. Pioneer Amer. Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 2d 770 (1963); United States v. Buffalo Sav. Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed. 283 (1963); United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L. Ed. 871 (1956); United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955); United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1953); United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315 (1941); United States v. Texas, 314 U.S. 480, 62 S. Ct. 350, 86 L.Ed. 356 (1941). For a discussion of the federal tax lien, the federal priority of insolvency and the status of various competing claims, see Myers, The Fall and Rise of the Security Interest, 6 Prac.Law. 60 (1960) and Myers, The Security of Security: Incursions of Federal Tax Liens, N.Y.L.J. (June 26–30, 1961).

However the question of the priority of the Government's tax lien over a competing lien becomes pertinent *only after* it has been determined that the taxpayer has "property" or "rights to property" to which the tax lien has attached.

> "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." Aquilino v. United States, 363 U.S. 509, 512, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960).

See United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed. 2d 1371 (1960); United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 241 F.2d 142 (2d Cir. 1957); Central Sur. & Ins. Corp. v. Martin Infante Co., 272 F.2d 231 (3d Cir. 1959); Wolverine Ins. Co. v. Phillips, 165 F. Supp. 335 (N.D.Iowa 1958).

■ While the classification of rights is a matter of federal law, the question of property rights is one of state law. The Supreme Court made this specific finding in Aquilino v. United States:

> "In answering that question [the question of whether the taxpayer has "property" or "rights to property"], both federal and state courts must look to state law for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * sought to be reached by the statute.' Morgan v. Commissioner, 309 U.S. 78, 82, 60 S.Ct. 424, 84 L.Ed. 585." 363 U.S. at 513, 80 S.Ct. at 1280, 4 L.Ed.2d 1365.

See United States v. Durham Lumber Co., supra; United States v. Bess, supra; United States v. Herman, 310 F.2d 846, 848 (2d Cir. 1962).

Thus, the initial question before this Court in regard to Section 6321 is whether under New York law a contractor-taxpayer has any "property" or "rights to property" in funds due the contractor for improvements while a subcontractor remains unpaid.

The "property rights" of a contractor-taxpayer in "improvement funds" held by a property-owner [2] are determined by Section 36–a of the New York Lien Law [3] which impresses a trust upon moneys paid or due for improvements to real property. The Section 36–a trust runs in favor of subcontractors, architects, engineers, surveyors, laborers and materialmen for claims arising out of those improvements. In pertinent part, the statute reads as follows:

> "§ 36–a. *Contractor who diverts funds guilty of larceny; civil remedy to enforce trust.* The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement * * * and any contractor * * * who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny * * *. Such trust may be enforced by civil action maintained as provided in article three-a of this chapter by any person entitled to share in the fund, whether or not he shall have filed, or had the right to

---

2. Under New York law the result would be the same even though the contractor himself had physical possession of the "improvement funds."

3. It may be noted that this statute was enacted in 1942 and repealed in 1959. Although the specific statute, Section 36–a, no longer exists, it is clear that this case must be decided under that section. Moreover, the new statute, Sections 70 and 71, contains substantially the same provisions.

file, a notice of lien or shall have re-covered a judgment for a claim aris-ing out of the improvement. For the purpose of a civil action only, the trust funds shall include the right of action upon an obligation for moneys due or to become due to a contractor, as well as moneys actually received by him."

Section 36-a was passed to prevent im-proper and irresponsible practices which were then prevalent in the construction industry. By enacting the "trust fund" provision, the Legislature prohibited contractors from diverting funds re-ceived for improvements to unrelated projects at the expense of the subcon-tractors and materialmen whose efforts were responsible for the improvement it-self. In the earliest version of Section 36-a, criminal prosecution was the only means of enforcing the trust. The 1942 amendment made a civil action available to the subcontractors, materialmen, and the other listed categories for whose ben-efit the statute had been enacted. These matters are fully discussed by the New York Court of Appeals in Aquilino v. United States, 10 N.Y.2d 271, 219 N.Y. S.2d 254, 176 N.E.2d 826 (1961).

The 1942 amendment which provided a civil remedy for violation of the "trust fund" provisions also enacted certain en-forcement provisions which included a one-year statute of limitations.

"ARTICLE 3-A Enforcement of Trusts

"§ 71. *Enforcement of trusts arising out of contract for public or private improvement; procedure.* A trust described in section \* \* thirty-six-a \* \* \* of article two of this chapter may be enforced by any person entitled to share in the trust fund in a representative ac-tion brought for the benefit of all persons entitled to share in the fund."

"§ 75. *Period of limitations.* No action to enforce a trust under this article shall be maintainable if com-menced more than one year after

completion of the improvement on account of which the claim arose."

The effect of this statute of limitations upon a trust created by Section 36-a will be treated hereafter.

### The Issues

The issues before this Court are as follows:

1. Did Whispell have any "prop-erty" or "rights to property" in the money held by Selderbeck to which a federal tax lien could attach?

2. Is Terns able to claim the pro-tection and benefit of Section 36-a in an action brought some four years after the completion of work on the Selderbeck job?

### Discussion

In determining whether Whispell had any "property" or "rights to property" in the money held by Selderbeck, Aqui-lino v. United States, supra, is directly on point. There a mechanics-lienor was vying for priority with a federal tax lien. The Supreme Court held that the ques-tion of property rights should be deter-mined by state law and remanded the matter to the New York Court of Appeals saying:

"This conflict should not be resolved by this Court, but by the highest court of the State of New York. We cannot say from the opinion of the Court of Appeals that it has been satisfactorily resolved. We find no discussion in the court's opinion to indicate the nature of the property rights possessed by the taxpayer un-der state law. Nor is the application to be made of federal law clearly de-fined. We believe that it is in the interest of all concerned to have these questions decided by the state courts of New York. We therefore, vacate the judgment of the Court of Appeals, and remand the case to that court so that it may ascertain the property interests of the taxpayer under state law and then dispose of the case according to established

principles of law." 363 U.S. at 515–516, 80 S.Ct. at 1281, 4 L.Ed.2d 1365.

The Court of Appeals on remand found that there was no interest to which the federal tax lien could attach.

"Our conclusion, then, is that, as a matter of New York law, a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid. This being so, it follows that the tax lien herein asserted by the Government against the property of the contractor-taxpayer is ineffective to reach such moneys and that the plaintiff subcontractors are entitled to the court-deposited fund." 10 N.Y.2d 282, 219 N.Y.S.2d 262, 263, 176 N.E. 2d 826, 832.

■ In view of the New York Court of Appeals' holding that under Section 36–a of the Lien Law a contractor has no "property rights" in moneys due from an owner under a contract "except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid," the Court necessarily finds that Selderbeck had no property belonging to Whispell to which the Government's tax lien could attach except after the liens of the subcontractors are satisfied. The United States Attorney's opposition to the Aquilino findings and his contention that this Court should disregard them are wholly without merit.

Having decided that Whispell had no "property" or "rights to property" to which the tax lien could attach, except any balance remaining after the subcontractors are paid, it is not necessary to consider the question of relative priorities between Terns and the United States.

Arguments that Terns' claim must fail because it is inchoate are irrelevant since the question of the "choateness," the per-fection or specificity, of competing claims becomes pertinent only after it is determined that there are in fact competing claims. In this case the federal tax lien did not attach to the money held by Selderbeck because it did not "belong" to Whispell. There are, therefore, no competing liens so long as Section 36–a of the New York Lien Law remains operative.

The remaining question then is whether Terns' claim is properly founded on Section 36–a. It has been argued by the Government that Terns' rights under Section 36–a have expired by virtue of the one year statute of limitations which provides that an action to enforce a Section 36–a trust shall not be maintained "if commenced more than one year after completion of the improvement on account of which the claim arose." New York Lien Law, § 75.

The only case this Court has found which specifically considered the duration of the trust created by Section 36–a is Davis & Warshow, Inc. v. S. Iser, Inc., 30 Misc.2d 528, 220 N.Y.S.2d 818 (Sup. Ct.1961). While that case is not determinative, it is instructive.

The court in Davis & Warshow was called upon to decide whether, by virtue of the one year statute of limitations, the trust fund terminated at the end of that year. If the trust terminated, a competing tax lien would have attached immediately upon the expiration of the one year period and would have had priority over the claims of a competing mechanic's lienor.

"If the trust terminated upon the expiration of the statutory period within which a lienor could initiate action to enforce the trust for his benefit, then the contractor has 'property' or 'rights to property' in the funds due from the owner, and the Federal tax lien would doubtless attach immediately to such indebtedness owing by the owner to the contractor—subject, of course, to liens having priority over the government under Section 6323 of the Internal Revenue Code." 220 N.Y.S.2d at 829.

The precise question of the duration of the trust under Section 36–a was one of first impression. The Davis court noted that the Court of Appeals in Aquilino had not considered the duration of the trust. However, after a thorough analysis of the policy behind the statute and the legislative history, the court found that the statute of limitations did not act to terminate the trust at the expiration of the one year period.

"It is * * * my opinion that the statutory trust may continue even after the expiration of the one-year period of limitation. The Law Revision Commission, in its 1942 report (p. 285), points this up when it states that the time within which the beneficiary may commence the representative action is 'a short period of limitations'. This denotes a procedural defense—which may or may not be affirmatively interposed by an appropriate party in interest, not the government on the basis of a tax lien—rather than a condition precedent to the substantive 'right' of the beneficiary to the 'property' involved, thus affording possible priority to the government's claim of tax lien against the contractor."

"Moreover, Section 70(3) [of the 1959 statute] specifically provides that the trust 'shall continue with respect to every asset of the trust until every trust claim arising at any time prior to the completion of the contract or subcontract has been paid or discharged, or until all such assets have been applied for the purposes of the trust.' These provisions negative the notion that the trust terminates if an appropriate action is not begun within the one-year period." 220 N.Y.S.2d at 829–830.

See generally Davis & Warshow, Inc. v. S. Iser, Inc., 220 N.Y.S.2d at 828–832.

The court's finding in Davis & Warshow that the expiration of one year did not terminate the Section 36–a trust is supported by the history of Section 36–a and the legislative history behind the 1942 amendment.

As stated previously, the statute when first enacted created a trust for the benefit of specified parties, imposed criminal liability for violation of that trust, and carried no specific statute of limitations. At that time it was not suggested that the Section 36–a trust would expire at the end of one year. In fact, quite the contrary was true as might have been expected from the Commission's report:

"It would seem that the trust arises as soon as the trustee designated in the provision receives the fund, and that such trustee is a resultant beneficiary, who is entitled to any remainder of the fund after it has been distributed to claimants entitled to share in it. *The trust would continue until all claims for services and materials on the improvement* (by the classes designated in the statutory provision) *have been paid.*" New York Law Revision Commission Report for 1962, 325–26. (Emphasis added)

The statute of limitations provided in § 75 of the New York Lien Law is procedural rather than substantive. This too is supported by the legislative history of the statute. In referring to the 1942 amendments the Law Revision Commission said:

"*A procedural article is proposed* to be added to the Lien Law, which provides for the enforcement of the trust by representative action. *It also includes provisions for* bonding of the trustee, a preference for wage claims, *a short period of limitations,* and court supervision of any settlement of the action." Id. at 285 (Emphasis added)

From this it becomes clear that the 1942 amendments were intended to add to the Lien Law a civil right of action maintainable within one year after the date of the completion of the improvement. The amendments were procedural rather than substantive. As such they served to add a further procedural remedy to the law rather than to substantively shorten the duration of a Section 36–a

**504**

trust. The statute of limitations, as the court in Davis & Warshow held, serves only to afford a proper defendant a defense against the civil action brought under Section 36–a more than one year after the completion of the work in question.

For these reasons, and in light of the court's holding in Davis & Warshow this Court now finds that the statute of limitations set forth in § 75 of the New York Lien Law did not act to terminate the trust created by Section 36–a at the expiration of the one-year period.

### Conclusion

Property rights are determined by state law and not by federal law. Whispell had no "property" or "rights to property" in the funds held by Selderbeck to which a tax lien could attach except after payment of all claims of subcontractors.

The case is governed by Section 36–a of the New York Lien Law which impresses a trust on the funds held by Selderbeck. That trust has not terminated. The statute of limitations found in § 75 of the New York Lien Law is procedural rather than substantive. For that reason it has no effect upon the duration of the trust created by Section 36–a.

The complaint and the complaint in intervention in this case each ask for declaratory judgment of the respective rights of the parties. The Court concludes that Terns has a prior right to any funds payable by Selderbeck to Whispell to the extent necessary to satisfy his lien; and that the lien of the Government against Selderbeck is limited to any balance remaining after all liens of subcontractors have been paid.

The amounts of the respective liens and of any balance which may be remaining after the lien of Terns has been paid are not sufficiently established in the moving papers and may still be in controversy. Such amounts must be established by further proceedings before final judgment can be entered herein. See Rule 56(d). So ordered.