**BETHLEHEM STEEL CORPORATION,**
Plaintiff,

v.

**John E. FOLEY, District Director of Internal Revenue, Schwab Bros. Trucking, Inc., Bero Construction Corp., and Herbert F. Darling, Defendants.**

**Civ. No. 11447.**

United States District Court
W. D. New York.
Oct. 23, 1967.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (Donald C. Lubick, Buffalo, N. Y., of counsel), for plaintiff.

John T. Curtin, U. S. Atty. (C. Donald O'Connor, Asst. U. S. Atty., Lee A. Satterfield, Trial Attorney, Tax Division, of counsel), for defendant District Director of Internal Revenue.

Eugene C. Tenney, Buffalo, N. Y., for defendant Schwab Bros. Trucking, Inc.

HENDERSON, District Judge.

Pursuant to Title 28 U.S.C. §§ 1340 and 2463, the plaintiff, Bethlehem Steel Corporation, has commenced this action to have it declared the owner of uninstalled materials, consisting of approximately 315,000 pounds of reinforcing bars and approximately 20,000 pounds of bearing piles, which were located along a construction site on the Kensington Expressway Arterial Highway in the City of Buffalo, New York. The plaintiff and the Government move for summary judgment.

In September of 1964, Bethlehem Steel Corporation contracted to furnish the reinforcing bars and bearing piles to Schwab Bros. Trucking, Inc. for use in construction of a portion of the Kensington Expressway. Following assessments and the filing of notices of federal tax liens, the District Director, on March 5, 1965, levied upon and seized numerous pieces of equipment of the taxpayer, Schwab Bros. Trucking, Inc., which were situated along the Kensington Expressway construction site, as well as the delivered but uninstalled materials referred to above. Upon stipulation of the parties, this court entered an order directing the sale of the uninstalled materials, and the proceeds of that sale have been paid into court.

The stipulation of the parties in part provides:

"For purposes of this action, it shall be deemed that the federal tax liens outstanding against Schwab Bros. Trucking, Inc. attached to the property interest and right to property of Schwab Bros. Trucking, Inc. in and to said uninstalled materials and that the defendant District Director as delegate of the Secretary of the Treasury had the authority to, and did, levy upon and seize said property interest and right to property of Schwab Bros. Trucking, Inc. before plaintiff exercised its rights, if any to repossess and remove said uninstalled materials."

It further provides:

"For purposes of this action the plaintiff shall be treated as if it had repossessed and removed all such materials and as if it had taken all steps necessary to exercise fully all of its rights, if any, under Section 39-c of the Lien Law of New York to repossess and remove all such materials, subsequent to the arising of the federal tax liens against Schwab Bros. Trucking, Inc. * * * and subsequent to the levy and seizure * * *."

Since it is clear that Schwab Bros. Trucking, Inc. had a property interest in and to the uninstalled materials on the date of the federal tax assessments and on the date of levy and seizure, the issue is narrowed to determining what property interest, if any, the plaintiff may have had by virtue of the provisions of section 39-c of New York's Lien Law, McKinney's Consol.Laws, c. 33. If, under state law, Bethlehem retained a property interest in the steel to which Schwab's rights were subject, the Internal Revenue

Service, deriving its interest through Schwab, could not affect or diminish that property right. See Aguilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

Section 39-c provides:

"If for any reason after the work of a private or a public improvement of real property is abandoned by an owner, a contractor or a subcontractor before the completion thereof by such owner, contractor or subcontractor, or if, after the same is completed, materials delivered are not used therefor, a person who has delivered materials for the improvement which have not been incorporated therein and for which he has not received payment may repossess and remove such materials; and thereupon he shall have no lien on the real property or improvements against persons secondarily liable, for the price thereof, but he shall have the same rights in regard to the materials as if he had never parted with the possession. This right to repossess and remove the materials shall not be affected by their sale, encumbrance, attachment, or transfer from the site of the improvement, except that, if the materials have been so transferred, the right to repossess them shall not be effective as against a purchaser or encumbrancer thereof in good faith whose interest therein shall have arisen since such transfer from the site of the improvement, or as against a creditor attaching after such transfer. The right to repossession and removal given by this section shall extend only to materials whose purchase price does not exceed the amount remaining due to the person repos-

sessing; but where materials have been partly paid for, the person delivering them may repossess them as allowed in this section on refunding the part of the purchase price which has been paid less the cost of removal."

It is clear that this section does not form a part of New York's trust fund provisions.[1] The legislative history[2] indicates that section 39-c was patterned after section 11 of the proposed Uniform Mechanics' Lien Act.[3] However, the court neither has been referred to nor has it found any New York cases helpful on this issue.

It is the court's judgment, however, that, based upon its nature and derivation the New York courts would view section 39-c as conferring upon a materialman an extraordinary remedy of self help, rather than creating a property interest or right.

Charles Howard Levitt, counsel to the Lien Law Revision and Enforcement Association, in a letter urging Governor Roosevelt to approve the bill which became section 39-c, pointed out the then existing plight of materialmen as follows:[4]

"Numerous cases occur annually where an operation is completed or abandoned, and materials amounting to thousands of dollars are left at the operation. Notwithstanding the fact that the person responsible for the cost of this material is hopelessly insolvent, the seller of the material is not in a position to repossess himself of such material without obtaining the consent of the buyer. Such consent is rarely given. In every one of these instances, the material man

1. Lien Law §§ 70–79–a.

2. See the letter of Charles Howard Levitt, counsel for the Lien Law Revision and Enforcement Association, to the late, then Governor, Franklin D. Roosevelt, which forms a part of the Governor's bill jacket covering the enactment of section 39–c.

3. Prepared by the Standard State Mechanics' Lien Act Committee of the Unit-

ed States Department of Commerce with the cooperation of The National Conference of Commissioners on Uniform State Laws (approved by the American Bar Association at its meeting in Washington, D. C., on October 12, 1932). Copies available through the National Bureau of Standards, United States Department of Commerce, Washington, D. C.

4. See note 2, supra.

whose material is left on the operation, sustains an unwarranted loss."

It is clear, therefore, that it was believed that the circumstances outlined in the bill called for a more equitable remedy than that generally afforded materialmen under New York law. However, rather than being the result of creation of a new property interest, that remedy would appear to flow from recognition of the materialman's lien interest and the peculiar needs dictated by the circumstances.

Since the federal lien attached prior to the stipulated exercise of rights under section 39-c, judgment may be entered for the Government.

Submit judgment on five (5) days' notice.

So ordered.