Frank OWENS et al.,

v.

**DRYWALL AND ACOUSTICAL SUPPLY CORP., et al. and the Greenway Bank & Trust, et al.**

Civ. A. No. 69–H–165.

United States District Court,
S. D. Texas,
Houston Division.

March 25, 1971.

Robert W. Hagen, Houston, Tex., for the plaintiffs.

Frank C. Herzog, Houston, Tex., for Drywall and Acoustical Supply Corp. and Wallace Mayad.

John H. Eikenburg, Houston, Tex., for R. A. Davio.

William G. Wilson, Hutcheson, Taliaferro & Grundy, Houston, Tex., for Greenway Bank & Trust.

Anthony J. P. Farris, U. S. Atty., and George R. Pain, Asst. U. S. Atty., for the United States.

MEMORANDUM AND ORDER

BUE, District Judge.

This action raises the issue under 26 U.S.C. § 7426 [1] as to whether a portion of that amount of money due

---

[1]. Plaintiff initiated this suit alleging this Court's jurisdiction under 29 U.S.C. § 185. However, defendant United States of America submits, and I agree, that the Court's jurisdiction is proper under 26 U.S.C. § 7426.

and owing Drywall, the employer corporation, under certain construction contracts, which amount was set aside for contribution to the Employees' Vacation Fund, is the property of Drywall to which a tax lien could attach and upon which levy might be made, or whether such amount constitutes trust funds which are not subject to levy. The action is now before the Court on cross motions for summary judgment, the plaintiffs herein and one of the defendants, United States of America, urging that each is entitled to judgment as a matter of law and that no genuine issue as to any material fact exists.

Plaintiffs here are the designated trustees of the Painter Local 130, Welfare Fund, established pursuant to a collective bargaining agreement entered into by the Houston chapter of Painting and Decorating Contractors of America and the Brotherhood of Painters, Decoraters and Paper Hangers of America, Local Union 130. Suit was originally brought against the employer-contractor, Drywall, and certain corporate officers of Drywall[2] pursuant to the provisions of the collective bargaining agreement which provide for the contribution of certain fringe benefits, including contributions to the Vacation Fund in the amount of $.10 per hour worked.

Drywall is a Texas corporation principally engaged in the building and construction industry, employing members of the Painters Local 130. Due to financial adversities, Drywall discontinued paying fringe benefits under the employment agreement in July of 1968, a portion of which contributions is still owing. Also remaining unpaid were employment taxes and penalties and interest thereon assessed in February and March of 1969 for various periods in 1968.

On February 7, 1969, and March 26, 1969, the Internal Revenue Service made levy on the money due and owing Drywall from Walter Scarborough, Cook Construction Co. and Jess Watson, under construction contracts for work performed in 1968. The levies were honored to the extent of $56,872.04, which, added to other payments and adjustments, satisfied Drywall's tax liability.

Plaintiffs joined as a defendant the Greenway Bank & Trust, which held possession of all construction payments received by Drywall and exercised control in the final disposition of such payments. Also joined as defendant is the Internal Revenue Service of the United States, co-payee with Drywall, pursuant to the levy made on construction payments still due.

Plaintiffs have since accepted the settlement offers of defendants, Greenway Bank & Trust, Wallace Mayad and R. A. Davio, and ask that these defendants be dropped from any and all further proceedings in this cause. Plaintiffs as trustees of the Fund now seek judgment against defendant Drywall, admittedly obligated to pay the $1,686.90 still due and owing the Vacation Fund, as well as against the United States which has collected a tax on said amount. They further seek a finding by this Court that the construction payment levied upon and collected by the Internal Revenue Service was property in which Drywall had no legal interest or right, but was instead a trust fund created by operation of Tex.Rev.Civ.Stat.Ann. art. 5472e (Supp.1970), upon which levy was improperly made.

■ Sections 6321 and 6322 of the Internal Revenue Code of 1954 create a lien for unpaid taxes in favor of the United States upon all property and rights to property belonging to the taxpayer at the time an assessment for taxes due is made. The relevant statutory provisions read:

Section 6321. Lien For Taxes.

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights

---

2. Wallace Mayad served as Vice-President, and R. A. Davio as President of Drywall.

to property, whether real or personal, belonging to such person.

Section 6322. Period Of Lien.

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time.

Plaintiffs assert that the construction payments here in question were never the property of Drywall, but were instead impressed with a trust for the benefit of the painter employees of Drywall under Article 5472e which provides in pertinent part the following:

Section 1. All moneys or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state, and all funds borrowed by a contractor, subcontractor, owner, or any officer, director or agent thereof, for the purpose of improving such real property which are secured in whole or in part by a lien on the specific property to be improved are hereby declared to be *Trust Funds for the benefit of* the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; provided, however, that moneys paid to a contractor or subcontractor or borrowed by a contractor, subcontractor, or owner may be used to pay reasonable overhead of said contractor, subcontractor, or owner, directly related to such construction contract. The contractor, subcontractor, owner, or any officer, director or agent thereof, receiving such payments or funds, or having control or direction of same, is hereby made and constituted a Trustee of such funds so received or under his control or direction. (emphasis supplied).

The determination of property rights is a question to be decided under state law, Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Only after it has been determined that the taxpayer, here, Drywall, has property or the right to property to which the tax lien may attach, does the question of the priority of that lien over competing claims come into issue. *See,* United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Terns v. Whispell, 227 F.Supp. 498 (S.D.N.Y.1964). Thus, while priorities are established pursuant to Federal law, the initial inquiry must concern property rights under applicable Texas law.

There have been no cases construing Article 5472e, enacted August 28, 1967. Thus, whether or not contributions made by an employer to an employees' Vacation Fund, or for that matter, whether or not contributions made for any fringe benefit qualify as monies paid "for the benefit of * * * laborers" which are protected under Article 5472e is undecided. Neither does it appear, after extensive research, that there are Texas cases decisive of these property rights in areas satisfactory for analogy. For this reason construction of the Texas statute will be taken from a comparison of statutes of similar wording and import, both state and federal.

A comparable New York statute, construed in Terns v. Whispell, 227 F.Supp. 498 (S.D.N.Y.1964), was held to impress a trust upon all funds due the contractor for improvements while a sub-contractor remained unpaid. Pursuant to an earlier New York case, the Court found that the statute did not confer on the contractor a sufficient beneficial interest in the monies due the contractor from the owner to give him a property right, "except insofar as there is a balance remaining after all sub-contractors and other statutory beneficiaries have

been paid." [3] The Court necessarily found that the contractor had no property rights to which the government's tax lien could attach. The statute in question, § 36–a of the New York Lien Law, McKinney's Consol.Laws c. 33, provided that "funds received by a contractor * * * for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects * * * laborers and materialmen * * *." [4] The statute was enacted to prevent certain irresponsible practices which were then prevalent in the construction industry such as the diverting of funds to unrelated projects prior to the satisfaction of the claims of sub-contractors and material men.

Although the facts are not clearly stated, the claim of plaintiffs in that case seems to be limited to wages for labor and reimbursement for materials expended. However, the reading of the statute was liberal rather than restrictive, and the wording of the statute broad, similar to art. 5472e.

■ It should be noted that the Texas statute has only recently been enacted,[5] seemingly to supplement the existing remedies available to laborers and materialmen. *See, e. g.*, Tex.Rev. Civ.Stat.Ann. art. 5160 (1971) and art. 5452 et seq. (1958 and Supp.1970). Thus within the limitation of the statutory terms, the Court should strive for a broad construction in order to "effectuate its protective purposes." United States for Benefit on Behalf of Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). The facts in the *Carter* case, *supra*, are more closely analogous to the facts here, although the question of law concerned the extent of

the liability of the surety on a payment bond furnished by a contractor under the Miller Act. Section 2(a) of the Miller Act provided that "every person who has furnished labor or material in the prosecution of the work provided for in such contract * * * and who has not been paid in full therefor * * * shall have the right to sue on such payment bond * * * for the sum or sums justly due him * * *." 40 U. S.C. § 270b(2) (a). The Supreme Court construed that section to include claims for contributions by the employer to the employees' Health and Welfare Fund, noting that the Act did not limit recovery to wages. The court overrode suggestions that such contributions should not be covered by the statutory terms because the employer's obligation therefor was contained only in the labor agreement and not in the construction contracts to which the United States was a party. Those same labor agreements, the Court noted, imposed the employer's obligation to pay wages to his employees, certainly a payment guaranteed by the bond.

■ The Court in *Carter* found that the employer's contributions to the employees' Welfare Fund were rightly included in the laborers' claim "for the sum or sums justly due him", reasoning that, if the collective bargaining agreement had instead provided for an additional seven and one-half cents per hour to be paid directly to the employees, who in turn agreed under contract to contribute that sum to the fund, such contribution would most definitely be covered by the Act.

The unpaid contributions were a part of the compensation for the work to be done by Carter's employees. The relation of the contributions to the

---

3. Aquilino v. United States, 10 N.Y.2d 271, 282, 219 N.Y.S.2d 254, 262, 176 N.E.2d 826, 832 (1961), on remand from 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

4. Section 36–a was repealed in 1959, but was applicable in *Terns* as the controlling law at the time the transactions resulting

in obligations under the statute occurred. The new statute, Sections 70 and 71 of the New York Lien Law were found to contain substantially the same provisions. 227 F.Supp. 498 at 500 n. 3.

5. Art. 5472e was enacted on August 28, 1967.

work done is emphasized by the fact that their amount was measured by the exact number of hours each employee performed services for Carter. Not until the required contributions have been made will Carter's employees have been 'paid in full' for their labor in accordance with the collective-bargaining agreements.

353 U.S. 210 at 217, 77 S.Ct. 793 at 797. Furthermore, the Court found that the trustees of the fund could properly bring suit to recover the unpaid contribution, even though they were not persons who had furnished labor or material, "nor [were] they seeking 'sums justly due' to persons who [had] furnished labor or material." The analogy was made to the right of an assignee of an employee to sue on the bond, and the relationship of the trustees of the fund to the employees was found to be closely analogous to an assignment. In addition, the Court found that the trustees had a greater right to sue on the bond than a mere assignee, since they were seeking to recover, not on their own account, but for the sole benefit of the laborers who were beneficiaries under the funds.

I am not persuaded to discard the logic of *Carter* by the citation of a case reaching a different result in another closely analogous situation, here cited by defendants in support of the United States' position. United States v. Embassy Restaurant, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959). That case held that contributions by an employer to a Welfare Fund under a collective bargaining agreement were not entitled to the priority of "wages * * * due to workmen" under § 64(a) (2) of the Bankruptcy Act. Mr. Justice Clark, writing for the Court, specifically distinguishes the *Carter* case, noting that to achieve priority under the Bankruptcy Act in advance of payments of dividends to creditors, the claim must be for "wages * * * not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants * * *." There is great logic in the restrictive language of the Bankruptcy Act and a restrictive application of the same, as distinguished from the broad protective purposes secured under the Miller Act. Priority attributed to wages in bankruptcy was "to provide the workman a 'protective cushion' against the economic displacement caused by his employer's bankruptcy." The purpose for which the Bankruptcy Act was promulgated would not be served if all claims "justly due" were given priority. Instead, all just claims not of such relative importance as wages to the workmen were granted protection elsewhere, as in the *Carter* case construction of the Miller Act.

The purpose and terms of the Texas Statutes here in question, where there is no definitive state construction, should be read in the light of the *Terns* and *Carter* decisions. There are no material issues of disputed facts. Accordingly, (1) plaintiff's motion to dismiss as against defendants Greenway Bank & Trust, Wallace Mayad, and R. A. Davio, pursuant to their settlement agreement is granted; (2) plaintiff's motion for summary judgment against defendants Drywall and Acoustical Supply Corp. and the United States of America is granted; (3) and this Court specifically finds that plaintiffs have a prior right to any funds payable under the construction contract to Drywall to the extent necessary to satisfy the amount of unpaid contributions to the Vacation Fund still remaining. It is so ordered.