In the Matter of CROCKER NATIONAL BANK, formerly Crocker-Citizens National Bank, a national banking association, Plaintiff,

v.

TRICAL MANUFACTURING COMPANY, a partnership, et al., Defendants.

UNITED STATES of America, Interpleader-Appellee,

v.

Dean SAKEL, Interpleader-Appellant.

No. 74–2230.

United States Court of Appeals, Ninth Circuit.

Sept. 5, 1975.

A. Alan Berger, San Jose, Cal., for appellant.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Scott P. Crampton, Asst. Atty. Gen., and Ernest J. Brown, Acting Chief, App. Section, Tax Div., Dept. of Justice, Washington, D. C., for appellee.

---

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

## OPINION

Before KOELSCH and HUFSTEDLER, Circuit Judges, and SMITH,* District Judge.

KOELSCH, Circuit Judge:

This is an appeal from a summary judgment for the United States.[1]

■ The question in this case results from the following sequence of events:

(1) Appellant, an unsecured creditor, placed a pre-judgment writ of attachment on the property of a partnership; (2) the partnership transferred title to the property to a successor corporation; (3) the corporation incurred unpaid tax liabilities; (4) a federal tax lien was recorded; and (5) the attaching creditor thereafter obtained a judgment. The question is whether the tax collector or appellant has prior right to the property.

The answer is: "the tax collector."

The United States has a lien under 26 U.S.C. § 6321 against "all property and rights to property" of taxpayer corporation, arising at the time the tax is assessed, 26 U.S.C. § 6322. Under 26 U.S.C. § 6323(a), the tax lien has priority over the claim of a judgment lien creditor if notice of the tax lien is filed before the judgment is obtained; it is undisputed here that it was. As a result, appellant quite properly concedes the incontestable fact that, if the partnership had not transferred the property and itself incurred the unpaid assessment, his rights as an attaching creditor would be inferior to the tax lien. *See United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). He nevertheless argues that transfer to the corporation alters the result.

The essential thrust of the argument is that the tax lien attaches only to property of the taxpayer; that under California law the corporation took the partner-

1. The district court's opinion is reported at *Crocker National Bank v. Trical Manufacturing Co.,* 373 F.Supp. 461 (N.D.Cal.1973).

ship property subject to the writ of attachment; and that upon perfection of the attachment lien by judgment it became apparent that the corporation did not obtain property to which the tax lien could attach.

■ That position is untenable in this case. As the parties recognize, property rights of the taxpayer are determined by reference to state law. *See, e. g., Aquilino v. United States,* 363 U.S. 509, 510, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). It is true that under some circumstances the Court has held that a taxpayer did not obtain in any real sense property rights to which a tax lien could attach when under state law the taxpayer's rights in the property were subordinated to those of other claimants and did not vest until the others claims were satisfied. *See, e. g., Aquilino, supra; United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

■ However, that is not the case here. Under California law a prejudgment attachment gives the attaching creditor an inchoate lien contingent on the outcome of the suit; it does not affect title or prevent transfer of the property subject to the lien. *Security Trust & Savings Bank, supra,* at 50; *Bass v. Stodd,* 357 F.2d 458, 464–465 (9th Cir.

1966); *Puissegur v. Yarbrough,* 29 Cal.2d 409, 412, 175 P.2d 830, 831 (1946); *Howe v. Johnson,* 117 Cal. 37, 48 P. 978 (1897). The transferee of the property takes what the transferor had—a vested interest subject to divestment upon the contingency of plaintiff's obtaining judgment occurring. Hence the corporation here had a present property right to which the tax lien could attach, and the statute in terms makes the tax lien once recorded superior to the inchoate lien.[2]

Indeed, appellant's position is necessarily rejected by *Security Trust & Savings Bank, supra.* The situation there was identical to that presented here, save there was no intervening transfer after the attachment lien was placed on the property. Were appellant's position accepted—that such a lien immediately divests the owner of the property in favor of the creditor to the extent the contingency of judgment is subsequently fulfilled—then the taxpayer in *Security Trust & Savings Bank* would have had precisely the same interest appellant argues the transferee corporation has here—the fact of transfer cannot alter the nature of the rights transferred—and under appellant's theory the creditor would have had rights superior to the government because the tax lien did not

**2.** As Justice Harlan pointed out in his *Aquilino* dissent, the scheme by which state law determines property rights and federal law determines priorities can conceivably lead to defeat of the federal priority scheme by formalistic redefinition of state law to divest the taxpayer of property rights upon attachment of inchoate liens. *See* 363 U.S. at 520, 80 S.Ct. 1277. Whatever the merits of the *Aquilino* Court's reconciliation of federal tax policy with the traditional policy of state determination of property interests, we think the doctrine of the *Aquilino* and *Durham Lumber* cases is limited to those instances, unlike here, where the state law gives the taxpayer no right to the property. Otherwise the priority scheme of federal law attaches. The state definition of property interests in this context is simply the definition of the relationship of conflicting parties with regard to the same piece of property. The tax lien law does the same thing. So long as the state recognizes some rights in relation to the property in the taxpayer, the Supremacy Clause enters to give the government whatever priorities Congress has deemed proper.

That judgment is ultimately based on fairness, public need for revenues, and the justifiable expectations of competing parties to the property. The 1966 amendment of the tax lien law defined priorities to give some parties with fairly certain and justifiable expectations such as those created by purchase, mechanics liens, security interests and judgment lines precedence over unnoticed tax liens, and gave the public policy of revenue raising precedence over more inchoate expectations against property needed to satisfy tax claims. As applied here, the priority scheme prefers federal tax needs to appellant's conditional expectation that he will obtain a judgment and thereafter satisfy it out of the particular property, in large part because the creditor did not extend credit in reliance on the property. Transfer does not alter that policy, as the government's interest in collection remains the same, particularly here where the transfer was simply upon the incorporation of the partnership and did not alter the risk of creation of subsequent tax liability.

attach to property of the taxpayer. That of course was not the case. Taxpayer's position is essentially the doctrine of "relation back" of the time of perfection, which the Court explicitly rejected in *Security Trust & Savings Bank*, 340 U.S. at 50, 71 S.Ct. 111.

Affirmed.