**UNITED STATES of America,
Plaintiff,**

v.

**Walter COTIER et al.,
Defendants.**

**Civil No. 869–73.**

United States District Court,
D. New Jersey.

Aug. 25, 1975.

As Amended Sept. 24, 1975.

Jonathan L. Goldstein, U. S. Atty.,
Newark, N. J. by Donald J. Volkert,

Asst. U. S. Atty., Newark, N. J., Richard A. Scully, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Walter S. Pryga, Rahway, N. J., for defendant Walter Cotier.

Stryker, Tams & Dill, by Garrett E. Brown, Jr., Newark, N. J., for defendant Claire Cotier.

Edward V. Ryan, Newark, N. J., for defendant Sirgany's Galleries, Inc.

## OPINION

COOLAHAN, Senior District Judge.

The United States commenced this action against Walter J. Cotier, Claire Cotier, Sirgany's Galleries, Inc., and certain other persons [1] to foreclose federal tax liens against 18 pieces of assorted women's diamond jewelry and one man's gold wristwatch.[2] Walter, the purchaser of the jewelry, is currently indebted to the United States for unpaid federal income taxes totaling approximately $70,000.[3] Claire, Walter's wife at the time the jewelry was purchased,[4] is similarly indebted to the Government jointly and severally with her former husband in an amount totaling approximately $35,000.[5] Sirgany's, the seller of the jewelry, holds two judgment liens against Walter's property interest in those items totaling approximately $145,000.

The facts underlying the indebtedness of the delinquent taxpayers, as well as those giving rise to the federal tax liens and to Sirgany's judgment liens, have been stipulated by the parties.[6] The only disputed factual questions concern ownership, between Walter and Claire, of 15 pieces of the women's jewelry. Claire never claimed ownership of the man's wristwatch, "Answer and Cross-claim" of Claire Cotier (Nov. 27, 1973) at 4, and Walter has admitted that three pieces of the women's jewelry are Claire's property. Tr. (July 28, 1975) at 25, 65–66.

Claire predicates her claim to ownership of the remaining pieces upon two bases. First, she urges that the jewelry was transferred to her by her husband as a gift. Second, she claims that, even if no valid gift is found, the jewelry nevertheless became her paraphernalia, and, therefore, her separate property under N.J.S.A. 37:2–14.[7] After a trial before the Court without a jury, these facts have been found concerning the disputed issue of ownership.

*Findings of Fact*

I

Walter and Claire Cotier were married in Toms River, New Jersey, in August 1964. She divorced him in Florida

---

1. Also named as defendants in the complaint were Walter S. Pryga, Joseph A. Citta, and Alan J. Pogarsky. Each had been named a trustee of the jewelry in two consolidated matrimonial actions between Walter and Claire.

   Pogarsky, besides being named in his capacity as trustee, was also sued in his individual capacity. He later filed an answer asserting an attorney's lien against the jewelry for services rendered to Claire in the matrimonial actions. Summary judgment on his claim was entered on May 28, 1974. Motion for the judgment was unopposed.

2. Subject matter jurisdiction is predicated on 28 U.S.C. §§ 1340, 1345. Section 1340 confers original jurisdiction on federal district courts of "any civil action arising under any Act of Congress providing for internal revenue. . . ." Section 1345 confers such jurisdiction on these courts in "all civil ac-

tions, suits or proceedings commenced by the United States . . .," except as otherwise provided by Congress. Authority to commence the present action is conferred on the United States Attorney General by 26 U.S.C. § 7403(a).

3. *See* Exhibit "A" *infra.*

4. Walter and Claire were divorced in a Florida proceeding in 1972. Tr. 249.

5. *See* Exhibit "A" *infra.*

6. *See generally id., infra.*

7. N.J.S.A. 37:2–14 provides:

   The paraphernalia of a married woman, being the suitable ornaments and wearing apparel of a married woman, which have come to her through her husband during coverture, shall be her separate property as if she were a feme sole.

in 1972. During coverture, they maintained their principal residence in New Jersey. A second residence was also maintained in Florida.

## II

The diamonds were purchased by Walter in Florida from Sirgany's Galleries, Inc., between December 1965 and August 1966.

## III

Walter paid for the diamonds either in cash or by personal note. Tr. 11. He also insured them under a policy naming himself as beneficiary. Tr. 13. Claire was aware that Walter had procured the insurance. Tr. 14. She neither insisted upon being named a beneficiary under Walter's policy, Tr. 14, nor procured a separate policy in her own name. Tr. 13. In 1967, certain diamonds were stolen from the Cotiers' Toms River home. Litigation ensued among various claimants to the insurance proceeds. Claire asserted no claim in the action.

## IV

Walter purchased various articles of clothing, furs, and jewelry as gifts for Claire both before and after their marriage. Walter testified that, when he handed these articles to Mrs. Cotier, either he informed her that they were gifts, Tr. 131, or he had them gift wrapped, Tr. 48.

## V

Walter owned six corporations engaged in construction business in 1964. He was reputed to be very wealthy. Tr. 262. His testimony reveals repeatedly that he considered that reputation essential to his continued business success. *See, e. g.,* Tr. 53–54, 59, 101–02. Accordingly, the Cotiers lived, Tr. 100–02, and entertained, Tr. 535, lavishly. They were, moreover, active both socially, *see* Tr. 117, and civically, *see* Tr. 578, in the Toms River community. On important business occasions, Walter insisted that Claire wear particular diamond pieces.

Tr. 18. She was permitted, moreover, to wear diamonds even when traveling to the local supermarket. Tr. 90–91.

## VI

Despite Walter's carefully cultivated reputation for wealth, his corporate complex rested on an unsound foundation. Two of his six corporations were already inactive by 1964. Another two were sold in March 1967 to third parties for $3,000. The last two were transferred in September 1966 to Walter's sons by a prior marriage without consideration. Walter testified that each piece of equipment owned by these enterprizes was unpaid for at the time of the 1966 transfer, Tr. 175, and that their condition generally was "not too good," *id.*

## VII

His business carreer prior to 1964, moreover, had been volatile. He had been victimized both by the vagaries of the business cycle, Tr. 35, and by poor health, Tr. 174. He developed a deep distrust of the Nation's economy. *See, e. g.,* Tr. 34–35. He read business forecasts widely, and became convinced that inflation would erode the value of the dollar. Tr. 147. Despite his concerns, Walter held no personal investments except the diamonds. Tr. 49.

## VIII

He began purchasing diamonds because he was fearful of inflationary pressures. Tr. 147. He informed various persons, including his wife, on separate occasions that he was purchasing these diamonds for investment reasons. Tr. 148, 193, 277, 286, 566–67. *But see* Tr. 352. He mentioned his wife's security as a motive behind the investment in certain instances. Tr. 277, 286, 529. Never, however, did he declare that he was purchasing the diamonds as gifts for Claire.

## IX

After purchasing a piece, Walter ordinarily handed it to Claire for examina-

tion saying, "How do you like this piece?" Tr. 48, 122. Walter never told her that any individual item belonged to her, *see* Tr. 34, *but see* Tr. 212, nor did he ever fasten an item on her person after purchase, Tr. 122, *but see* Tr. 214.

## X

When Walter and Claire visited the home of Claire's aunt, Grace Swan, Walter stood silent when Claire said Walter purchased the diamonds "because he loves me so much." Tr. 570. The statement was made in the presence of two of Claire's aunts and one of her cousins. Similarly, however, when Walter's sons by a prior marriage visited Walter and Claire at their Toms River, New Jersey, home, Claire stood silent when Walter said he purchased the diamonds because "he felt that the economy in this country at that time was going to start deteriorating." Tr. 193.

## XI

Shortly after beginning to purchase diamonds,[8] Walter installed a safe in a bathroom of the Cotiers' Toms River home. The diamonds were placed within it. Tr. 21. Prior to the safe's installation, the diamonds were kept in a jewelry roll held by Mrs. Cotier. Tr. 82.[9] The safe's location and combination were known both by Walter and by Claire. Tr. 21.

## XII

At some point after the safe's installation, Claire removed the diamonds from it and distributed them among various safe deposit boxes maintained in her own name. Tr. 216. The removal was done without Walter's knowledge or consent. *See* Tr. 80. He initially discovered the diamonds missing in August 1966.

## XIII

At that time Walter was compelled to travel to Florida to settle an insurance claim. He delayed his departure one week in order to allow Claire, who was suffering migraine headaches, to accompany him. Ultimately, he became impatient and left alone. Upon returning to New Jersey, Walter discovered Claire and the diamonds missing. He testified that he exclaimed that his wife "stole my diamonds." Tr. 578. When she returned three days later, Tr. 74, the couple's earlier dispute apparently intensified. See Tr. 74, 576.

## XIV

While in Florida, Walter had purchased a $37,000 diamond from Sirgany's Galleries. On the afternoon of the purchase, he indicated that he was "in the doghouse" and "would be interested in buying a ring for Claire." Tr. 279. But after leaving Florida, Walter failed to give Mrs. Cotier the ring upon her return home. *See* Tr. 75, 603. *But see* Tr. 235–36. Three weeks later, Tr. 75, 603, requesting that she wear it to a formal function which they were to attend that evening, Walter handed his wife the $37,000 diamond. Tr. 578.

## XV

In the meantime, Claire had pawned two diamonds in order to hire detectives to follow Walter while he was in Florida. Tr. 237, 238. Walter later redeemed them, and allowed Claire to take possession of them from the pawnbroker. Tr. 241–42.

## XVI

After their August 1966 marital difficulties, the couple attempted to reconcile their differences. They planned a world cruise, which they took between Septem-

---

8. Claire testified, however, that the safe was installed in late 1966. Tr. 215. But her memory for dates, she admitted, is "very poor." Tr. 330.

9. The jewelry was held by Mrs. Cotier in part because Walter found carrying it personally during working hours to be inconvient, Tr. 82, and in part because Claire, who was allowed to wear the jewelry, "complained" when Walter suggested that it be placed in his own safe deposit box. Tr. 84, 87.

ber and December 1966. Walter apparently redeemed the pawned diamonds prior to their September departure.

## XVII

During the voyage, the diamonds were kept in the office of the purser. Tr. 78. While in the Orient, Claire again attempted to leave Walter. She also attempted to take the diamonds with her. *Id.* Although her departure was successfully prevented, Walter was unable thereafter to persuade her to surrender the diamonds. Tr. 79.

## XVIII

Shortly after their return from the cruise, in January 1967, Claire left Walter without notice. Tr. 22. Walter pursued her, but, when reconciliation failed, he again demanded possession of the diamonds. Claire, however, again refused to comply. Tr. 22–23.

## XIX

Thereafter Claire sued for maintenance and support in New Jersey. Walter commenced a separate divorce action. The actions were consolidated. On September 5, 1967 Walter moved for an order directing Claire to surrender the diamonds. While the motion was pending, Claire returned 13 diamond pieces to Louis Sirgany, president of Sirgany's Galleries. She told him "I don't want to see you get hurt." On October 6, 1967 Claire was ordered to deliver the jewelry to certain court-appointed trustees for purposes of appraisal. She retrieved the jewelry from Sirgany and complied with the order. The matrimonial actions were dismissed with prejudice. The ownership issue was not resolved.

### Conclusions of Law

### I

■ In actions to foreclose federal tax liens, federal law governs questions concerning the lien's validity and effect; state law, however, governs questions concerning the respective rights to property to which the lien attaches. *See, e. g., Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

### II

Since the relevant facts of this case touch both Florida and New Jersey, conflicts of laws questions arise concerning ownership of the property subject to the federal tax lien. Given a difference or discrepancy between the choice of law rules of the forum state and those which a federal court would apply after an exercise of independent judgment, this Court might apply state rather than federal conflicts principles. In this case, however, since the Court is unaware of an applicable state law precedent, it is required to exercise its independent judgment on these issues. *Cf.* 1A *Moore's Federal Practice* ¶ 0.309[2].

### III

Two separate choice of law issues arise concerning ownership of the jewelry. The first relates to the question whether the jewelry constituted a valid gift from Walter to Claire; the second to the question whether the jewelry became Claire's paraphernalia.

### IV

■ The first issue presents a false conflict. Both New Jersey and Florida recognize the validity of a gift of property from husband to wife; both also require that such a gift be proved by clear and convincing evidence of delivery to the wife and intent by the husband to divest himself of all control and dominion over the property. *See, Garner v. Bemis,* 81 Fla. 60, 87 So. 426, 427 (Fla.Sup.Ct.1921); *Farrow v. Farrow,* 72 N.J.Eq. 421, 423, 65 A. 1009 (Ch. 1906). Neither jurisdiction, however, has decided a case which would control specifically the present controversy. Under these circumstances, where the Court is unaware of a material difference between the relevant laws of the interested jurisdictions, it ought to apply

the local law of the forum. *See Restatement, Conflicts 2d* § 244, *comment* "n."

## V

The second issue relating to ownership of the jewelry, whether it became Claire's paraphernalia, presents a true conflict. By statute in New Jersey, a wife's paraphernalia is her separate property. N.J.S.A. 37:2–14. In Florida, there exists no similar statute. Florida then, at the time of the transactions here in question,[10] presumably followed the common law rule that a husband during his lifetime is the legal owner of the paraphernalia of his wife. *See, e. g., In re Grant,* 10 Fed.Cas. No. 5,693 p. 973 (1842).

## VI

One spouse's interest in movables acquired by the other spouse during coverture is determined by the law of the State in which the spouses were domiciled at the time the movable was acquired. *See Restatement, Conflicts 2d* § 258(a)(b). Thus the question whether the jewelry in this case became Claire's paraphernalia should be governed by New Jersey law.

## VII

A. Claire failed to prove by clear and convincing evidence that the diamonds were transferred to her as gifts.

B. Undisputed evidence establishes that the diamonds were physically handed to Claire at some time after each purchase. This proof is sufficient to establish the delivery element of a gift transfer. But wanting is clear and convincing evidence that Walter intended to surrender complete control and dominion over the diamonds.

C. No words or conduct indicative of donative intent accompanied any particular transfer. Walter, the alleged donor, informed both his wife and others that the diamonds were to provide future security for himself and his wife. Walter's later failure to deny that he purchased the diamonds "because he loves [Claire] so much"—even assuming it to be inconsistent with his claim that the diamonds were investments—[11] must be weighed both in light of the surrounding circumstances and of Claire's analogous admission that Walter purchased the diamonds because "he felt that the economy . . . was going to start deteriorating."

D. Physical dominion over the diamonds, moreover, was not exclusively enjoyed by Claire. Apparently, it was jointly shared by her and Walter. No evidence suggests that she objected to the diamonds being placed in the safe. The safe, however, was within the joint control of Walter and Claire.[12]

E. Claire's later removal of the diamonds to a safe deposit box maintained in her name cannot establish a transfer by gift because Walter was unaware of Claire's conduct when it occurred.

F. Walter's failure to interfere with Claire's use and possession of the diamonds prior to her attempt to leave him in the Orient is not, under the circumstances, inconsistent with his claim of ownership. When Walter discovered that Claire "stole" his diamonds, the Cotiers were experiencing marital diffi-

---

10. Florida's Constitution was revised in 1968 to abolish all distinctions between husband and wife in regard to property ownership. Fla.Const. Art. 10, § 5 (1968). The revisions, however, operate prospectively only. *See id.* Art. 12, § 7. Since the claims of Walter and Claire accrued before its date, their effect, if any, on the present controversy need not be determined.

11. Walter never testified that he intended to prevent his wife from sharing in the pro-

ceeds of sale of his investments should a sale prove necessary.

12. Claire also placed some of her own jewelry in the safe. Nevertheless, that the diamonds in question were kept in an area subject to the joint control of husband and wife is at least a factor to be considered in determining whether the diamonds were a gift to the wife.

culties arising from sources other than their rights to the jewelry. They attempted thereafter to resolve those difficulties by taking a pleasure cruise. An attempt by Walter at that time to interfere with his wife's admitted rights to use the jewelry would undoubtedly have undermined the purpose of the cruise. By abstaining from that action until it became more clear that their other marital difficulties were irreconcilable, Walter did not undercut fatally his claim of ownership of the diamonds.[13]

## VIII

■■ A. The Court is also unable to conclude that the diamonds became Claire's paraphernalia. At common law, although a wife could recover her paraphernalia from her husband's estate in the event he predeceased her, a husband during his life was the legal owner of such property. *See, e. g., In re Grant, supra.*

B. The New Jersey courts, in 1906, were faced with a fact situation similar to the present case. In *Farrow v. Farrow, supra,* a wife, having separated from her husband, sought to recover from him two pieces of diamond jewelry on the ground that he had transferred them to her as a gift. Testimony was adduced showing that the jewelry was purchased as an investment, that he parted with possession of it, and that she was permitted to wear it. Under these circumstances, the court observed,

. . . the evidence shows that it was purchased by the husband, not as a gift to his wife, but as an investment for their joint benefit, and also for the purpose or ornamenting the wife on suitable occasions, in other words, either it remained the absolute property of the husband or, at most, it became the wife's paraphernalia. [72 N.J.Eq. at 423–24, 65 A. at 1010.]

Since the husband was not deceased, and since the common law rule of paraphernalia was then in effect in New Jersey, the *Farrow* court found it unnecessary to resolve the question whether the diamonds had become the paraphernalia of the wife.

C. In 1915, however, that common law rule was altered by the New Jersey Legislature. N.J.S.A. 37:2–14 now provides:

The paraphernalia of a married woman, being the suitable ornaments and wearing apparel of a married woman, which have come to her through her husband during coverture, shall be her separate property as if she were a feme sole.

■ D. The passage of N.J.S.A. 37:2–14 requires this Court to resolve the question left open in the *Farrow* case. The statute defines the ownership rights of husband and wife in "paraphernalia." Unanswered by the provision, however, is when "ornaments" which a married woman is permitted by her husband to wear come within the "paraphernalia" category. Clearly the husband's intent to relinquish all dominion and control need not be proved. Perhaps, absent evidence to the contrary, a wife need show only that the item in question comes within the definition of "ornament" and that it was handed to her by her husband. But the Court cannot conclude that the New Jersey Legislature sought to bar every husband from claiming ownership of diamonds purchased as investments simply because he permitted his wife to wear them during the period in which he held them for resale or for security. A fair reading of the statute compels the conclusion that where a husband (1) establishes by credible proof that he expressly informed his wife at the time of purchase that the diamonds she was allowed to wear were to serve as security

---

13. I reach the same conclusion concerning both Walter's delivery of the $37,000 ring to his wife and his permitting her to regain possession of the pawned jewelry. Both acts were consistent with Claire's prior rights over diamonds acquired by Walter.

against future contingencies, (2) holds no other personal investments, and (3) has provided his wife with a substantial number of other articles of clothing and jewelry, he has successfully reserved ownership of the diamonds in himself.

E. Early English decisions which permitted a wife to claim jewelry as her paraphernalia even where her husband later recovered possession of the property, *see Northey v. Northey*, 2 Atk. 77 (1740), or later pledged it to secure a loan, *see Graham v. Londonderry*, 3 Atk. 393 (1746), are distinguishable from this case. No proof was adduced in them that the husband had expressly reserved property rights in the jewelry prior to transfer. Walter Cotier did effectively reserve ownership rights in the property. The jewelry did not become the "paraphernalia" of his wife under N.J. S.A 37:2–14.

## IX

■ The United States has valid tax liens against the property of Walter Cotier for unpaid 1963 federal income taxes and against the property of both Walter and Claire for unpaid 1964 federal income taxes.[14] *See* 26 U.S.C. § 6321. Notice of those liens having been filed before October 1, 1968, they are entitled to priority over both judgment liens held by Sirgany's Galleries against the jewelry. *See* 26 U.S.C. § 6323. Sirgany's earlier lien having been filed before October 23, 1968, it is entitled to share in the proceeds of the jewelry prior to the tax liens for the years 1965 and 1966.

Counsel shall prepare an order in accordance with this opinion directing a sale of the jewelry and entitling the United States and Sirgany's to deficiency judgments in the event that the proceeds of sale are insufficient to satisfy existing claims against the property.

Exhibit A

STIPULATION OF FACT

It is hereby stipulated and agreed by the parties, as evidenced by the signatures of their respective counsel affixed hereto, that the following facts are true:

1. That assessments for unpaid federal taxes and interest were duly made against Walter Cotier for the years 1963 and 1966 on the dates indicated below; that notice and demand for payment of each assessment was duly sent to the taxpayer on the dates indicated; that notices of federal tax lien relating to the assessments were duly filed on the dates indicated; and that Walter Cotier is currently indebted to the United States on these assessments in the amounts indicated in the following schedule:

| Year | Date of Assessment and of Notice & Demand | Unpaid Balance of Assessment | Interest Accrued Through 5–1–74 | Total Due | Date Notice of Lien Filed |
|------|-------|-------|-------|-------|-------|
| 1963 | 12–8–67 | $12,588.19 | $5,173.20 | $17,761.39 | 6–26–68 [1] |
|      |         |            |           |            | [2] |
|      |         |            |           |            | 1–05–73 [1] |
|      |         |            |           |            | 1–08–73 [2] |
| 1966 | 7–4–69 9–5–69 | $13,006.35 | $3,177.19 Lien Filing Fees | $16,183.54 | 10–23–69 [2] |
|      |         |            |           | 30.00 |      |
|      |         |            |           | $33,974.93 * |      |

14. Since the value of the three pieces of jewelry owned by Claire is far below her pro rata share of her joint 1964 tax liability, she cannot claim as against Sirgany's Galleries a right to any proceeds which might remain after the Government's 1963 and 1964 liens have been satisfied.

* Plus interest accruing after 5–1–74 of the rate of $4.00 per day until paid.

1. Notice of lien filed with Register of Deeds, Union County, New Jersey.

2. Notice of lien filed with County Clerk's Office, Ocean County, New Jersey.

2. That assessments for unpaid federal taxes and interest were duly made against Walter and Claire Cotier, jointly and severally, for the years 1964 and 1965 on the dates indicated below; that notice and demand for payment of each assessment was duly sent to the taxpayers on the dates indicated; and that Walter and Claire Cotier are jointly and severally indebted to the United States on these assessments in the amounts indicated in the following schedule:

| Year | Date of Assessment and of Notice & Demand | Unpaid Balance of Assessment | Interest Accrued Through 5-1-74 | Total Due | Date Notice of Lien Filed |
|------|-------|-------|-------|-------|-------|
| 1964 | 12-8-67 | $12,144.98 | $ 4,027.36 | $16,172.34 | 3-29-68 [1]<br>5-09-68 [2]<br>1-05-73 [1]<br>1-08-73 [2] |
| 1965 | 7-4-69 | $15,686.15 | $ 3,814.55<br>Lien Filing Fees | $19,500.70<br>48.00<br>$35,721.04 * | 10-23-69 [2] |

3(a) That Sirgany's Galleries, Inc. obtained judgments against Walter Cotier in this Court in Civil Action No. 553-67 as follows:

| Date | Amount |
|------|--------|
| 8-22-68 | $66,568.55, plus interest |
| 12-10-69 | $77,712.30, plus interest |

(b) On September 4, 1968, a writ of execution was issued pursuant to the judgment of August 22, 1968 and pursuant to said writ a levy was made on the jewelry that is the subject of this action on October 1, 1968.

Dated: November 4, 1974.

(s) Garret E. Brown
GARRET E. BROWN
Attorney for Claire Cotier

(s) Walter S. Pryga
WALTER S. PRYGA
Attorney for Walter Cotier
By Martin L. Mintz

(s) Richard A. Scully
RICHARD A. SCULLY
Attorney for United States
of America

(s) Edward V. Ryan
EDWARD V. RYAN
Attorney for Sirgany's
Galleries, Inc.

* Plus interest accruing after 5-1-74 at the rate of $3.94 until paid.

1. Notice of lien filed with Register of Deeds, Union County, New Jersey.

2. Notice of lien filed with County Clerk's Office, Ocean County, New Jersey.