T.C. Memo. 1997-227


UNITED STATES TAX COURT


CHARLES F. URBAUER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5323-95.                           Filed May 13, 1997.


Charles F. Urbauer, pro se.

<u>Mark I. Siegel</u>, for respondent.


MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined an $18,759 deficiency in petitioner's 1990 income tax.  At issue is the extent to which, if at all, petitioner is liable for tax upon capital gain realized upon the sale of the principal family residence in accordance with a divorce decree.  The facts have been stipulated.

Petitioner, Charles F. Urbauer, resided in Troy, Michigan, when he filed the petition in this case. On June 18, 1966, petitioner and Kim Urbauer were married. During and through the end of their marriage, petitioner's principal residence was in Bloomfield, Michigan. On January 9, 1990, petitioner and Kim were divorced.

In the Property Settlement of the Consent Judgment of Divorce (property settlement), the divorce court ordered "that the marital home at 2312 Hunt Club Drive, Bloomfield Hills, Michigan, which is presently listed for sale, be sold and the proceeds of the sale, after expenses, be applied in the following manner". There followed four items of debts and liens. The divorce court then ordered:

> Fifth: Establishment of an escrow fund in the amount of $62,000 for the payment of the capital gains tax due in connection with the marital home;

> Sixth: Any balance split seventy-five (75%) percent to the Plaintiff [Kim] and twenty-five (25%) percent to the Defendant [petitioner].

Kim was given control of the $62,000 escrow account, was entitled to the interest therefrom, and was required to pay any taxes on the marital home. She was to "hold [petitioner] harmless from any taxes due and owing from the sale of the marital home up to the estimated $62,000."

On September 4, 1990, petitioner and his ex-wife sold the marital home for $280,000. In contemplation of the sale, they entered into a "Stipulation to Amend Judgment of Divorce Regarding Tax Payment". This stipulation provides in relevant part:

> 1. That the sale of the marital home did not produce sufficient monies to pay the tax liabilities or potential tax liabilities set forth in the judgement [sic].
>
> *     *     *     *     *     *     *
>
> 3. That item Fifth on page 6 is reduced to an escrow fund of $54,000--the anticipated capital gains taxes on the sale of the residence.
>
> 4. That the net proceeds of the sale of the property-- $14,551.91 shall be divided between the parties as follows:
>
>> Kim U. Urbauer        $10,913.94
>> Charles F. Urbauer      3,637.98

The division of the $14,551.91 between Kim and petitioner was on a 75/25 basis. The stipulation was signed by both parties and dated September 4, 1990. However, the $54,000 in the escrow fund was not used to pay the income tax on the capital gain of the marital home.

On January 12, 1995, the Commissioner issued a notice of deficiency to petitioner which determined that petitioner was liable for 50 percent of the tax on the gain from the sale of the principal residence. The deficiency notice, which accompanied

the petition herein, explained the Commissioner's determination

as follows[1]:

> It is determined that you are responsible for fifty (50) percent of the gain on the sale of your personal residence. The residence was sold to a 3rd party as part of the property settlement. When it was sold you and your ex-wife held the property as tenants in the entirety. Therefore, you are responsible for fifty (50) percent of the gain and your taxable income is increased by $82,915.00.

Section 61(a)(3)[2] includes in gross income "Gains derived

from dealings in property". State law determines the property

ownership interest of a taxpayer; Federal law controls the tax

consequences. Aquilino v. United States, 363 U.S. 509, 512-513

(1960). Since the property in question, petitioner's principal

residence, was located in Michigan, Michigan law is controlling

as to ownership of the property. In accordance with Michigan

law, the marital home was held by husband and wife as tenants by

the entirety. Hoyt v. Winstanley, 191 N.W. 213 (Mich. 1922).

Moreover, under Michigan law:

> Every husband and wife owning real estate as joint tenants or as tenants by the entireties shall, upon being divorced, become tenants in common of such real estate, unless the ownership thereof is otherwise

---

[1] A copy of the deficiency notice incorporated in the stipulation of facts contained only a truncated portion of the explanation above, cutting out several inches of the left hand margin, apparently the result of careless photocopying.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

determined by the decree of divorce. [Citations omitted.]

Mich. Stat. Ann. sec. 25.132 (Law. Co-op. 1992). On August 22, 1978, petitioner and his wife purchased the marital home and held it as tenants by the entirety up to the time of their divorce. Under the Michigan statute, unless the divorce decree provided otherwise, upon their divorce they became tenants in common.

The property settlement attached to the divorce decree ordered that the house be sold, an escrow fund be established, the ex-wife be responsible for paying the taxes out of the escrow fund, and the balance be split 75/25 between the spouses. Although the decree directed the distribution of the proceeds from the sale of the house, it did not change the ownership of the property. At the time of the sale, petitioner owned 50 percent of the property. As a result, he is responsible for 50 percent of the tax from its disposition.

Petitioner argues that since his ex-wife received the proceeds of sale, she is liable for the entire capital gain. We hold otherwise. In the first place, the wife did not receive the proceeds of sale. The sale price was $280,000, and the great bulk thereof was used to discharge debts of both husband and wife. Indeed, there was an insufficient amount to discharge all the tax liabilities for years preceding the sale. Moreover, $54,000 was set aside in escrow to pay the tax on the gain on

sale of the marital home.  Only $14,551.91 remained to be divided between the spouses on a 75/25 basis.

The owner of property or income is responsible for tax with respect thereto.  As indicated above, since the divorce court did not change the result of the operation of Michigan law, petitioner owned a one-half interest in the house and is thus responsible for half the tax.

Petitioner also contends that since his ex-wife received 75 percent of the net proceeds and was responsible for paying the tax, she was the beneficial owner of the property.  In support of his argument, petitioner relies on Friscone v. Commissioner, T.C. Memo. 1996-193.  On brief the Government also relies upon Friscone and has reduced its claim to tax to only 25 percent of the gain.  That 25-percent figure comes from the provision in the divorce decree for distribution of the small amount remaining after discharge of all the liabilities relating to the property and the establishment of the $54,000 escrow for payment of tax on the gain.  Nowhere else is there any indication in the decree that the property or its proceeds is being divided on a 75/25 basis between the spouses.

Both parties misconceive the holding in Friscone.  There the taxpayer-husband owned stock, the proceeds of which the divorce court divided between the spouses, 45 percent to the husband and 55 percent to the wife, with tax liability divided in the same

manner.  The husband had a buy-sell agreement in place with his brother, which had not been implemented at the time of the divorce.  We held that the taxpayer was liable for only 45 percent of the tax on the gain on sale of the stock.  We relied on the outstanding buy-sell agreement:

> It obviously appeared more convenient to cast the divorce decree in terms of percentages of the proceeds to be received, since a satisfactory resolution of the details of the sale under the buy-sell agreement had not yet been negotiated.  Although the decree did not order a transfer of title to 55 percent of the shares directly to Linda [the taxpayer's ex-wife], it plainly provided, in the division of the assets of the marriage, for a transfer to her of <u>beneficial ownership</u> of the stock.  * * *  When the divorce decree became final, Linda acquired both the benefits--entitlement to 55 percent of the proceeds from the sale--and the burdens--the obligation to pay taxes on 55 percent of the proceeds--of stock ownership.  * * * Since she was the legal, if not the record, owner of 55 percent of the shares, * * * [the taxpayer] was acting on her behalf to the extent of her beneficial ownership in the 150 shares of MUI when the stock was sold to MUI. * * *

<u>Id.</u>

The present case is entirely different.  In <u>Friscone</u>, the divorce court felt constrained by the existing buy-sell agreement.  In order to reach the same result, outright transfer of 55 percent of the stock to the wife, the divorce court did the next best thing--it gave her beneficial ownership.  Unlike <u>Friscone</u>, in petitioner's case there was no impediment to the divorce court dividing ownership of the house between petitioner and his ex-wife.  To make Kim the owner, the divorce court had merely to transfer full title to Kim, which it chose not to do.

It does appear that the divorce court gave Kim control of the escrow account so that she could use the interest. The property settlement provided:

> IT IS FURTHER ORDERED AND ADJUDGED that the escrow fund established for the payment of the Federal and State capital gains tax on the marital home in the amount of Sixty-Two Thousand ($62,000.00) Dollars [subsequently reduced to $54,000.00] shall be under the exclusive control of the Plaintiff, who shall be entitled to the interest thereon until the date the tax is paid which interest shall be applied towards [sic] Plaintiff's alimony as provided for in the Alimony paragraph of this Judgment.

This arrangement also benefited petitioner, since it lessened his overall alimony obligation.

Petitioner also argues that since the divorce decree allocates responsibility for paying the tax to his ex-wife, he cannot be held liable for tax. To the contrary, petitioner "can not divest [himself] of liability for tax by execution of a contract to which the United States is not a party." Humbert v. Commissioner, 24 B.T.A. 828, 829 (1931); Neeman v. Commissioner, 13 T.C. 397, 399 (1949), affd. 200 F.2d 560 (2d Cir. 1952).

We conclude that the Commissioner was correct in the deficiency notice in attributing 50 percent of the gain to petitioner. However, since the Government on brief, in ill-advised reliance upon a misunderstanding of Friscone, has reduced its claim to tax from 50 percent to 25 percent of the gain, it must take the consequences of that latter position. Accordingly,

since petitioner will be charged with tax on 25 percent of the gain from the sale of the family residence,

Decision will be entered under Rule 155.