# Validity of Federal Tax Lien
# on Civil Service Retirement Refund

Under 5 U.S.C. § 8346(a), the Internal Revenue Service is barred from attaching the civil service retirement refund of a former federal employee in order to satisfy her husband's tax liability, notwithstanding any interest the latter individual may have in the refund under Nevada's community property law.

January 13, 1981

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, OFFICE OF PERSONNEL MANAGEMENT

This responds to your request for an opinion on the validity of a levy of the Internal Revenue Service (IRS) directed to half the civil service retirement deductions due for refund to Mrs. D, a former federal employee. The levy was occasioned by the individual tax liability of Mrs. D's husband, with whom she resides in Nevada, a community property state.

The statute relating to civil service retirement benefits that is principally relevant here provides as follows:

> The money mentioned by this subchapter [Subchapter III—Civil Service Retirement, consisting of 5 U.S.C. §§ 8331–8348] is not assignable, either in law or equity, *except under the provisions of subsections (h) and (j) of section 8345 of this title,* or subject to execution, levy, attachment, garnishment, or other legal process, *except as otherwise may be provided by Federal laws.*

5 U.S.C. § 8346(a) (emphasis added). Subsection (h) of § 8345 permits an individual entitled to an annuity to make allotments or assignments of amounts therefrom for such purposes as the Office of Personnel Management (OPM) considers appropriate. Subsection (j), among other things, requires that funds which are otherwise payable by OPM to an individual under the retirement laws shall be paid instead to another person if so provided in a "court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to" such a decree. Subsection (j) encom-

passes court-ordered divisions of assets under state community property laws.

The provision of the IRS Code that is principally relevant here is 26 U.S.C. § 6331(a), which reads in pertinent part:

> If any person liable to pay any tax neglects or refuses to pay the same . . . it shall be lawful for the Secretary [of the Treasury] to collect such tax . . . by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person . . . .

Section 6334 does not exempt any payments made under the civil service retirement laws.

The issue in dispute between OPM and IRS is whether the second "except" clause of 5 U.S.C. § 8346(a) has the effect of bringing Nevada's community property law into play with regard to the retirement deductions accumulated by OPM for Mrs. D's account. If so, IRS may reach 50 percent of the funds in the account as Mr. D's "property [or] rights to property" under 26 U.S.C. § 6331(a).

Before dealing specifically with this issue, it will be helpful to trace the history of 5 U.S.C. § 8346(a) and other statutory provisions that may impinge on an individual's civil service retirement benefits. The original progenitor of § 8346(a) was § 14 of the legislation enacted in 1920 to create the retirement system, Pub. L. No. 66–215, 41 Stat. 614, 620. Section 14 did not contain the italicized language of § 8346(a), *supra,* but read simply as follows:

> That none of the moneys mentioned in this Act shall be assignable, either in law or equity, or subject to execution, levy, or attachment, garnishment, or other legal process.

This wording remained essentially unchanged until late 1975. However, before then Congress had provided in other statutes for the government's deductions of health insurance premiums (5 U.S.C. § 8906(c)), life insurance premiums (5 U.S.C. § 8714a(d)), and medicare premiums (42 U.S.C. § 1395s(d)) from an individual's retirement annuity. In addition, Congress had enacted § 459 of the Social Security Act, 42 U.S.C. § 659, effective January 1, 1975, which lifted the bar of § 8346(a) and similar provisions in other federal benefit laws for the purpose of allowing garnishment of benefits to satisfy an obligation for child support or alimony.[1]

The first amendment to 5 U.S.C. § 8346(a) was made by Pub. L. No. 94–166, 89 Stat. 1002 (1975). It added subsection (h) to § 8345 to permit allotments and assignments by annuitants and correspondingly amended

---

[1] Two years later Congress defined "alimony" so as not to include a payment in compliance with a community property settlement—that is, Congress specifically ruled out garnishments to enforce such settlements. 42 U.S.C. § 662(c) (Supp. I 1977).

§ 8346(a) to introduce the first "except" clause, as it pertains to subsection (h).[2] It also added the second "except" clause.

Finally, in 1978, Congress enacted 5 U.S.C. § 8345(j) to allow OPM to comply with a decree, order, or property settlement (including one based on a state's community property law) that arose from a divorce, annulment, or legal separation.[3] Pub. L. No. 95–366, 92 Stat. 600, § 1(a)(1978). Section 8346(a) was amended accordingly by the addition of the italicized reference to § 8345(j) in the first "except" clause of § 8346(a). *Id.,* § 1(b).

Turning to the issue before us, we note first that there is nothing in the legislative history of the amendment of § 8346(a) in 1975 to indicate the reason for adding the words, "except as otherwise may be provided by Federal laws," at its end. In fact, this language was not necessary to achieve the avowed purpose of the 1975 Act—that is, the authorization of allotments and assignments by annuitants.[4] That purpose was realized by the enactment of § 8345(g) and the first "except" clause. Moreover, the second "except" clause was not necessary for the effectiveness of any of the earlier laws listed above because each was self-contained, and it was not necessary to enable IRS to reach funds payable under the retirement law to employees or former employees delinquent in the payment of their taxes.[5] The most that can be said about the provision is that it was probably included *pro forma.*

Passing the question of purpose for the moment, we find that there was also silence in Congress concerning the meaning of the term "Federal laws" in the second "except" clause. We are faced in this context with a significant lack of assistance because we must determine whether the term covers 26 U.S.C. § 6331(a) as read together with the community property law of a state. If not, IRS cannot take half of Mrs. D's retirement deductions to reduce her husband's indebtedness to the government.

We are of the opinion on this point that in the absence of congressional guidance regarding either the purpose of the second "except" clause or, more importantly, the scope of the term "Federal laws," the term must be read in its natural sense of embracing only federal statutory laws.[6] More particularly, we are unable to find either a precedent

---

[2] Public Law No. 94–166 mistakenly designated the new subsection in § 8345 as "(g)" and made the same mistake in § 8346(a). The errors were corrected by Pub. L. No. 95–366, 92 Stat. 600 (1978).

[3] Section 8345(j) in effect negated, as it applied to OPM, the provision in the definition of "alimony" in 42 U.S.C. § 662(c) that excluded payments based on community property laws. *See* note 1, *supra.*

[4] *See* H.R. Rep. No. 446, 94th Cong., 1st Sess. 1–2 (1975).

[5] 39 Comp. Gen. 203 (1959); 27 Comp. Gen. 703 (1948); 21 Comp. Gen. 1000 (1942). These opinions, insofar as relevant here, were grounded on general principles of setoff.

[6] *Cf.* H.R. Rep. No. 713, 95th Cong., 1st Sess. 2 (1977), accompanying the bill that enacted § 8345(j). At p. 2 the Committee paraphrased the second "except" clause of § 8346(a) as follows: "except as may be *expressly* provided by Federal laws" (emphasis added). S. Rep. No. 1084, 95th Cong., 2d Sess. 2 (1978), contains the same paraphrase.

or a basis for construing the term to encompass a state's community property law by transmutation through the medium of 26 U.S.C. 6331(a). In short, we conclude that Nevada's community property law, in the absence of explicit legislation by Congress, has not created for Mr. D "property [or] rights to property" in his wife's retirement deductions that are assailable by IRS.

We are not inattentive to the judicial doctrine that state law generally governs the determination whether a federal taxpayer has an ownership interest in property sufficient for an IRS levy to grasp for taxes due from him. *Aquilino* v. *United States*, 363 U.S. 509 (1960). That rule, of course, is subject to the strictures of the Supremacy Clause of the Constitution. *See Hisquierdo* v. *Hisquierdo*, 439 U.S. 572, 581 (1979); *United States* v. *Yazell*, 382 U.S. 341, 352 (1966). However, we do not view the gloss put on § 6331(a) by *Aquilino* and similar cases as being pertinent here. It is one thing to hold that, paramount federal interests aside, the government should abide by state laws "in the field of family and family-property arrangements." *United States* v. *Yazell*, 382 U.S. at 352. It is another to conclude that the United States is bound by state law in its own administration of the Civil Service Retirement System.

There is no clash between federal and state interests here that requires scrutiny in the light of the Supremacy Clause. What is involved in reality is a clash between two federal policies, one calling for the expeditious collection of taxes and the other for the protection of retirement deductions and benefits so that they will be paid to the persons who earned them. Since, in the instant matter, the barrier of 5 U.S.C. § 8346(a) remains in place to block the thrust of the power granted IRS by 26 U.S.C. § 6331(a), there can be no question that the latter policy prevails.

> We are mindful of the consideration that legislation in aid of collection of Government revenues should be liberally construed and applied. There is obviously an imperative public interest in favor of the prompt collection of delinquencies. But manifestly it cannot be validly considered an overriding policy in any particular situation unless Congress has so demonstrated its intention.

*United States* v. *Sullivan*, 333 F. 2d 100, 119 (3d Cir., 1964).

In summary, IRS is not entitled to obtain any of Mrs. D's funds from OPM for application against her husband's tax liability.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*