In re SOUTHWESTERN FABRICATORS, INC., Debtor.

Bankruptcy No. 783–01929.

United States Bankruptcy Court,
W.D. Texas,
Midland-Odessa Divisions.

June 8, 1984.

Robert W. Swanson, Austin, Tex., for debtor.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Federal Deposit Insurance Corporation ("FDIC") objected to the noticed intention of the trustee in this Chapter 7 case to abandon a portion of an account receivable to a creditor, J & J Steel and Supply Company ("J & J Steel"). The following summary constitutes findings of fact and conclusions of law after nonjury trial.

The facts substantially are uncontroverted. Prior to bankruptcy the debtor had engaged in the structural and reinforcing steel fabrication business. On an occasion prior to bankruptcy of debtor Oasis Pipeline Company had contracted with Bowen Construction Company ("Bowen") for the construction by Bowen of a natural gas pipeline in Ward County, Texas. Bowen issued its subcontract to debtor to fabricate various compressor stations along the pipeline. J & J Steel was a supplier to debtor of materials valued at $10,162.18 required for the completion of debtor's subcontract.

On October 27, 1983, debtor filed petition for order for relief under Chapter 7 of Title 11, United States Code. On that date Bowen had not paid debtor the full amount of monies due under the subcontract and debtor had not paid J & J Steel for the materials purchased by it and used on the Bowen subcontract. In its subsequently filed schedules debtor listed $4,119,367.58 in liabilities and $1,615,494.66 in assets, of which $448,994.66 represented accounts receivable owed by others to debtor.

J & J Steel was scheduled by the debtor as an unsecured creditor dating from April 5, 1983, with the total amount of the J & J Steel debt listed as "unknown". At the § 341 meeting on December 30, 1983, the trustee announced his intention to abandon specifically to J & J Steel $8,000.00 [1] of a receivable from Bowen Industries. FDIC, contending that it has a prior claim to the receivable from Bowen, objected to the proposed action on the part of the trustee.

State law is determinative on the issue of entitlement to property rights while federal bankruptcy law is relevant on the issue of priorities of rights. The parties have stipulated that FDIC does in fact possess a validly perfected lien on accounts receivable of the debtor. They have further stipulated that J & J Steel was a supplier to the debtor and that it had perfected a mechanic's lien against oil and gas properties under the provisions of the Hardeman Act, VACS art. 5452 *et seq.* [2]

Specifically J & J Steel contends that it has timely and properly perfected its subcontractor's lien provided by art. 5474 of the Hardeman Act and therefore is not required to perfect under Article 9 of the Texas Business and Commerce Code. It posits that to the extent of $10,162.18 the Bowen indebtedness to the debtor is a trust fund for its benefit as provided by VACS art. 5472e. Thus it contends that under state law it has property rights in the receivable.

Article 5472e provides:

Section 1

"All monies or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state, and all funds borrowed by a contractor, subcontractor, owner, or any officer, director or agent thereof, for the purpose of improving such real property which are secured in whole or in part by a lien on the specific

---

1. The Bowen receivable exceeds the $10,162.18 debt claimed by J & J Steel to be owed by debtor. However, the J & J Steel representatives had effected a "settlement" with the trustee whereby J & J Steel would accept $8,000.00 in compromise. This resulting litigation cancelled the "settlement" between J & J Steel and the trustee.

2. Repealed by Acts 1983, 68th Leg., eff. January 1, 1984. However, the Texas Property Code which became effective on January 1, 1984, contains provisions which are substantially identical to relevant provisions of the Hardeman Act.

property to be improved are hereby declared to be Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property...

Section 2...

Section 3...

Section 4

This act shall have no application to any bank, savings and loan association or other lender or to any title company or other closing. agent in connection with any transaction to which this act is applicable. Further, monies or funds received under a construction contract are exempt from the provisions of this Act if the full contract amount is covered by a corporate surety payment bond."

FDIC challenges the assertion of property rights in the Bowen receivable advanced by J & J Steel on three separate bases. First, it contends that no trust fund exists until the money is actually paid to the contractor or the subcontractor from whom the materialmen is claiming. Second, it claims that if the money had been paid to the debtor the FDIC, as the owner of the account receivable, is entitled to setoff the overhead expenses of the debtor against the amount received. Finally, it argues that art. 5472e does not apply to banks and since FDIC claims to be in the position of The First National Bank of Midland it is entitled to that same legislature-granted exemption.

The intent of the Texas legislature in enacting § 4, arguably annulling the trust fund concept when a bank is involved, is obscure. In fact, it is not clear that § 4 sets out an absolute exemption to the bank where there are not transactions involving one or more of the other entities mentioned in § 4 ... savings and loan association, other lenders, title companies, or closing agents. The Supreme Court of Texas has not meaningfully addressed the issue. Also I presently an unpersuaded that FDIC can advance a setoff claim based on any nebulous "overhead" argument. However, resolution of the issues in this case based on the second and third defenses advanced by FDIC is pretermitted, because I have determined that no trust fund in fact exists.

■ The relevant terminology of § 1 art. 5472e provides that "all monies paid to a ... subcontractor ... under a construction contract ... are hereby declared to be trust funds for the benefit of ... materialmen who may ... furnish ... material for the construction ..." The statute clearly omits inclusion in the trust fund any monies which merely might be *due or owing* to the subcontractor ... the monies actually must have been paid before the trust becomes effective. In this case the monies have not been paid to the subcontractor, but are still held by Bowen (or possibly held by the owner, Oasis Pipeline Co.). One might argue that there is no benefit to mechanics and materialmen impressing a trust fund against monies only after they come into the possession of the debtor, because the debtor could either conceal the monies or could dispose of those monies in such fashion that the creditors could not trace them. That result is a definite possibility. However, the statute literally requires that the monies shall have been paid to Southwestern Fabricators, Inc., before the trust fund for the benefit of J & J Steel exists. In construing a statute the language actually used must ordinarily be regarded as conclusive, absent a clearly expressed legislative intent to the contrary. *United States v. Lorence,* 706 F.2d 512, 516 (5th Cir.1983) quoting from *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see* also *Garcia v. Gloor,* 618 F.2d 264, 268 (5th Cir.1980) ("In interpreting a statute the court starts with its plain words without pausing to consider whether a statute differently framed would yield results more consonant with fairness and reason"); *Fleming v. A.H. Belo Corporation,* 121 F.2d 207, 213 (5th Cir.1941) ("It is settled law that statutes must be construed in

accordance with the intent of the legislature as expressed in the language of the act as a whole ... its meaning may not be sought by the courts in the vague penumbrae of the wishes and desires of its proponents and its opponents as these are expressed in debate").

Further in those relevant cases where the courts have held that a trust fund for the benefit of the materialmen existed there was one common ingredient ... the monies had been paid to the subcontractor or into the registry of the court prior to the trial. As authority for its argument that the trust fund in fact exists J & J Steel cites the district court case of *Owens v. Drywall and Acoustical Supply Corporation*, 325 F.Supp. 397 (D.C.S.D.Tex.1971). However, not only did that case involve funds which had been paid to the IRS pursuant to a tax levy against a contract the statute which was construed in *Owens* is quite different from art. 5472e. The New York statute [3] in that case provided in relevant part:

> "For the purposes of a civil action only, the trust funds shall include the right of action upon an obligation for monies due *or to become due* to a contractor, as well as monies actually received by him." (emphasis added)

The Court in *Owens* had been persuaded by the analysis of that New York statute which in turn had been made by a New York district court in *Terns v. Whispell*, 227 F.Supp. 498 (S.D.N.Y.1964). The *Owens* court noted the dearth of relevant Texas cases construing the Texas statute. There still is a paucity of Texas cases which deals with the phrase "paid" but Texas courts have denied summary judgments in *Bank of North Texas v. Red Henry Painting Co.*, 509 S.W.2d 444, 448 (Tex.Civ.App.—Corpus Christi 1974) aff'd on remand 521 S.W.2d 339 (Tex.Civ.App.—Corpus Christi 1975, no writ), and directed verdicts in *Berger Engineering Co. v. Village Casuals, Inc.*, 576 S.W.2d 649, 651–2 (Tex.Civ.App.—Beaumont 1978, no writ) when the parties failed to prove that funds in fact had been paid to the contractor or subcontractor.

 Philosophically the J & J Steel argument has considerable charm. However, I am constrained to follow what I perceive to be the law of the state in determining that no identifiable property right in the receivable exists on behalf of J & J Steel.

I conclude, therefore, that J & J Steel and Supply Company has no property interest in and to the Bowen receivable which is equal or superior to the security interest of FDIC in and to that receivable.

It is, therefore, ORDERED by the Court that the challenge by FDIC to the trustee's noticed intention to abandon the Bowen Industrial receivable to J & J Steel be, and it is hereby, sustained.

All relief not herein granted is denied.

---

3.  § 36a New York Lien Law, McKinney's Consol.Laws c. 33.