## UNITED STATES of America, Plaintiff-Appellant,

### v.

## UNITED BANKS OF DENVER, as Trustee of the Trust created by the Last Will of Carl J. Martinson, and William Arthur Martinson, Defendants-Appellees.

### No. 75–1273.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 28, 1976.

Decided Oct. 6, 1976.

James F. Shepherd, Washington, D. C. (James L. Treece, U. S. Atty., Denver, Colo., of counsel, Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jr., Crombie J. D. Garrett, Karl Schmeidler, and John G. Manning, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellant.

Gene W. Reardon, Denver, Colo. (Reardon, Reardon & Reardon, a Professional Corporation, Denver, Colo., of counsel, on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and BREIT-ENSTEIN and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue as posed by the parties is whether the taxpayer's interest in a trust fund established by his father's will constitutes "property" or "rights to property" to which a federal tax lien may attach under Section 6321 of the Internal Revenue Code of 1964. As will be developed, we view the issue before us to be much narrower. In any event, the trial court held that the taxpayer's interest under his father's will did not constitute either "property" or "rights to property" under Section 6321, and accordingly granted the trustee's motion for summary judgment. The Opinion and Order of the trial court is reported as P–H 1975 *Fed. Taxes* (35 Am.Fed.Tax R.2d) ¶ 75–449 (D.Colo. Jan. 17, 1975). The United States now appeals the dismissal of its action.

This is a civil action instituted by the United States against the United Banks of Denver, as trustee of the several trusts created under the last will of Carl J. Martinson, to foreclose an Internal Revenue tax lien of $142,540.81, plus interest, upon all property and rights to property belonging to the taxpayer, William Arthur Martinson, Carl's son. The section of the Code under which the United States brought this proceeding appears at 26 U.S.C. § 6321 and reads as follows:

> 6321. *Lien for taxes*
>
> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all *property and rights to property,* whether real or personal, belonging to such person. Aug. 16, 1954, c. 736, 68A Stat. 779. (Emphasis added.)

The tax deficiency which formed the basis of the present action arose out of unpaid income tax by the taxpayer, William Arthur Martinson, for the years of 1950 and 1951. The taxpayer was later indicted for willful tax evasion in 1959. By that time the taxpayer had disappeared, sometime during 1957, and has not been seen since. Whether he was dead or alive at the date this proceeding was instituted was not known. However, for the purposes of the summary judgment hearing before the trial court, it was assumed that the taxpayer was still alive. In other words the basis for the trial court's ruling was that, even assuming that the taxpayer be still alive, his interest under his father's will was not "property" or a "right to property" under 26 U.S.C. § 6321, and hence was not subject to a tax lien foreclosure proceeding. The underlying facts are not in dispute.

The taxpayer's father, Carl J. Martinson, died in 1969 leaving a will which had been executed in 1959. In his will the father, after making two minor bequests of $1,000 each, devised and bequeathed his home and furnishings to his widow, Mabel Martinson, and then devised and bequeathed the remainder of his estate to the United Banks of Denver, as trustee, to be held under the terms of several trusts established by the will. Three-eighths of the residue of the estate was to be held in the Mabel Martinson Fund for the use of Mabel, who, incidentally, is the taxpayer's stepmother.

Carl's will further provided that should Mabel predecease her husband, two-thirds of the property which would have gone into the Mabel Martinson Fund should go into a trust to be known as the William Arthur Martinson (the taxpayer) Fund. Alternatively, the will provided that should Mabel survive her husband, on her (Mabel's) death three-fourths of the balance then held in the Mabel Martinson Fund should go to the William Arthur Martinson Fund. In this latter connection the provision relating to the William Arthur Martinson Fund reads as follows:

> 2. Three-fourths (¾ths) to my Trustee herein named, IN TRUST, NEVERTHELESS, which Trust shall be known as the "WILLIAM ARTHUR MARTINSON FUND", it to pay to

my son, WILLIAM ARTHUR MARTINSON, from the income and from so much of the principal as may be necessary, the sum of One Thousand Dollars ($1,000.00) a month for so long as he lives or until said fund is fully paid to him; provided, however, in event my son, WILLIAM ARTHUR MARTINSON, does not survive me, or surviving me, dies before receiving the balance of the distribution of principal and income, then one-third (⅓rd) thereof shall be and become a part of the "CARL DAVID MARTINSON FUND" hereinabove provided, one-third (⅓rd) thereof shall be and become a part of the "CHARLES MARTINSON FUND" hereinafter provided, and one-third (⅓rd) thereof shall be and become a part of the "ANTHONY MARTINSON FUND" hereinafter provided.

As indicated, Carl, the taxpayer's father, died in 1969, and Mabel, Carl's wife, survived him. Mabel, under applicable Colorado law, renounced the will and elected to take the share allowed her by Colorado law as the surviving widow. *Colo.Rev.Stats.* § 153–5–4 (1963). In connection therewith the state probate court attempted to "equally compensate" the several trust funds created under Carl's will for the "losses" caused by Mabel's election. At the same time the state probate court refused to accelerate William's interest under his father's will. In this latter regard the state probate court decreed as follows:

\* \* \* \* \* \*

[T]he dominant intent of the Testator was to postpone the enjoyment of the William Arthur Martinson Fund . . . until the death of Mabel Martinson, and therefore, the gift . . . should be distributed to the Trustee named herein.

\* \* \* \* \* \*

With respect to the three-eighths (⅜) of the income derived from the property held in the trust . . . and belonging to the William Arthur Martinson Fund, the Court finds that it should not be distributed but shall be accumulated until

the death of Mabel Martinson, and further finds that there shall be no acceleration of the enjoyment of the principal and no payments made from the principal or income of the William Arthur Martinson Fund except as above provided until the death of Mabel Martinson.

As above indicated, Mabel Martinson was living and residing in Denver, Colorado as of the commencement of the present proceeding, and apparently remains alive as of the present time. It was in this general setting that the trial court concluded that William's (the taxpayer's) interest in the trust created in his name under his father's will did not constitute "property" or a "right to property" under 26 U.S.C. § 6321, inasmuch as Mabel still survived, and that such being the case, William's interest was *contingent* on his outliving his stepmother.

The trial court reasoned that William's interest in the trust fund was contingent, not vested, and being contingent, was therefore beyond a creditor's reach under local Colorado law. Additionally, the trial court held that the taxpayer's interest being only contingent did not "as a matter of federal law" qualify as "property" or a "right to property" as those terms are read in 26 U.S.C. § 6321. It was on this general basis that the trial court granted the trustee's motion for summary judgment and entered judgment for the trustee.

It is agreed that the "property rights" of the taxpayer in the instant case are to be determined as a matter of local Colorado law and that once William's rights have been thus determined, then resort should be made to federal law to ascertain whether such constitute "property" or "rights to property" within the meaning of the federal tax lien statute. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960) and *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

As applied to the instant case, the foregoing indicates that the trial court quite properly looked to Colorado law to determine the precise nature of William's (the taxpay-

**822**

er's) interest in the trust created in his favor under his father's will. As indicated, the trial court concluded that under Colorado law William's interest was contingent, i. e., he had no right to receive any monies from the trust unless he survived his stepmother, Mabel.

On appeal we were uncertain as to whether under Colorado law William's interest in the trust created in his favor under his father's will is a future interest subject to a condition precedent or a vested remainder subject to complete defeasance on the happening of a condition subsequent. Accordingly, pursuant to the provisions of Colorado Appellate Rule 21.1, we certified that question to the Colorado Supreme Court. The Colorado Supreme Court accepted such certification and in an adversary proceeding in that court, which included additional briefing, held that under Colorado law William's interest in the trust in question is *not* a future interest subject to a condition precedent, and therefore contingent, but on the contrary the taxpayer's interest is a vested interest subject to complete defeasance. *See In Re Question Submitted by the United States Court of Appeals for the Tenth Circuit,* 553 P.2d 382 (Colo.1976).

■ The determination by the trial court in the instant case that William's interest was contingent was the keystone of its entire ruling. The subsequent determination by the Colorado Supreme Court that William's interest was not contingent, but vested, requires that the case be remanded to the trial court for reconsideration.

■ After the Colorado Supreme Court announced its ruling on our certification, the trustee filed in this Court a request to file a supplemental brief. In such supplemental brief the trustee sought to raise a matter which had not heretofore been presented to this Court and had not been passed on by the trial court. In such circumstance, the request to file a supplemental brief is denied. The matter sought to be thus raised should first be considered by the trial court.

Judgment reversed and case remanded for further consideration.