**PITTWAY CORP. and Subsidiaries,**
**Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94 c 5478.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 25, 1995.

May 5, 1995.

---

Lee Radford, Todd Farlow Maynes, Kirkland & Ellis, Chicago, IL, for plaintiff.

Michele Marion Fox, U.S. Attorney's Office, Chicago, IL, Barbara E. Seaman, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On September 7, 1994, Pittway Corp. ("Pittway") sued to recover $410,783 in income taxes, plus interest, that it paid to the government for its taxable year ended December 31, 1984. On January 26, 1995, Pittway moved for summary judgment. On February 9, the government responded to Pittway's motion and moved for judgment on the pleadings. For the reasons discussed below, we deny Pittway's motion and grant the government's.

### I. Background

Pittway is a Delaware corporation. Valois, S.A., is Pittway's 90%–owned French subsidiary. In turn, Perfect Ventil Valois GMBH ("PVV") is Valois' wholly-owned German subsidiary. On May 23, 1984, Valois' Board of Directors authorized the distribution of PVV stock to Pittway. On June 28, 1984, Valois' shareholders voted to approve the distribution. And on July 9, 1984, Valois made the distribution.

### II. Discussion

#### A. Introduction to the Statutory Issues

In 1984, Congress amended the Internal Revenue Code to provide that a corporation recognizes gain on a distribution of appreciated property to its shareholders. § 54(a)(1). According to § 54(d)(1), the amendments "apply to distributions declared on or after June 14, 1984." According to § 54(d)(3), however, § 54(d)(1) does not apply to "any distribution before January 1, 1985, to an 80–percent corporate shareholder if the basis of the property distributed is determined under section 301(d)(2)."

In this case, the issue is whether Valois, the distributing corporation, recognized gain

on its distribution of appreciated stock to Pittway, its shareholder. To resolve the issue, we decide whether, pursuant to § 54(d)(1), Valois "declared" its distribution after June 14, 1984. If we decide that it did, we also decide whether, pursuant to § 54(d)(3), the basis of Valois' distributed stock is determined under § 301(d)(2).

## B. The Section 54(d)(1) Issue

■ Although neither § 54(d)(1) nor the common law defines the term "declare," the Seventh Circuit considered similar terminology in *U.S. v. Murine Co., Inc.*, 90 F.2d 549 (7th Cir.), *cert. denied*, 302 U.S. 734, 58 S.Ct. 119, 82 L.Ed. 567 (1937). In that case, on December 15, 1932, the plaintiff's Board of Directors resolved "that ... the Treasurer ... is authorized to pay as a dividend to the stockholders of record ... the sum of Twenty Dollars ... per share." *Id.* at 550. The Board further resolved, however, "that in the event, in his judgment, the condition of the treasury ... shall not warrant payment of such dividends, he may omit the same or defer the payment." *Id.* After June 1933, the plaintiff paid the dividends to its stockholders, and the government collected taxes on those payments.

The plaintiff challenged the government's (and the lower court's) interpretation of § 213(a) of the National Industrial Recovery Act, which provided that "[t]he tax imposed by this section shall not apply to dividends declared before [June 16, 1933]." *Id.* The challenge raised "[t]he question [of] ... whether the resolution adopted December 15, 1932, constituted a valid declaration of dividends." *Id.* at 551. The government argued that the resolution did not constitute a valid declaration because its language "was not definite, final and irrevocable so as to create the relation of debtor and creditor between the corporation and its stockholders." *Id.* The court agreed, reasoning that the resolution authorized the Treasurer to make the payments, but it also "clearly authoriz[ed] [him] to do two [other] things—either 'omit' payment or 'defer' payment." *Id.* The court "conclu[ded] ... that [the] dividend payments made after the enactment of the statute ... were properly assessed." *Id.*

In *Carney v. Crocker*, 94 F.2d 914 (1st Cir.1938), the court considered a similar issue and reached a similar conclusion, that "the resolution voted by the trustees ... on March 24, 1933, by its very terms was not a fully declared dividend, for it was made conditional upon the approval of the president, treasurer, and assistant treasurers." *Id.* at 916. "This being so, the relationship of debtor and creditor, between the association and the shareholders, did not arise before June 16, 1933, and it was within the power of the trustees, so far as this record discloses, to have rescinded the resolution ... at any time before June 29, 1933, when the distribution was made." *Id.* at 916–7. Therefore, the court held that "[i]t necessarily follows that the dividend was not fully and unconditionally declared before June 16, 1933, and was subject to the tax imposed by section 213(a)." *Id.* at 917.

The *Carney* court followed the *Murine* Court, which supports the Seventh Circuit's ruling, but, more importantly, the *Carney* court quoted the Bureau of Internal Revenue's Cumulative Bulletin XII–2, which "advis[ed] as to the construction and applicability of section 213(a)." *Id.* at 915. The Bulletin stated that:

> In order for a dividend to be fully 'declared,' within the meaning of the statute the action taken by the board of directors must be such as to create the relationship of debtor and creditor between the corporation and the stockholder, and the debt so created must be a legal and enforceable debt which is definite, final and irrevocable.

XII–2 at 402–3.

As the *Carney* court, we follow the *Murine* court and, in light of the Bureau's Bulletin, hold that distributions are "declared" when the distributor creates a relationship of debtor and creditor between it and the distributee, and which distributor's debt is legal and enforceable, meaning definite, final and irrevocable.

To determine when a distributor "declared" a distribution, however, we look to state law. In *U.S. v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86

L.Ed.2d 565 (1985), the Court stated that " 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property.' " *Id.* at 722, 105 S.Ct. at 2925 (quoting *Aquilino v. U.S.*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960)). "This follows from the fact that the federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.' " *Id.* (quoting *U.S. v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)).

■ In this case, to determine when Valois "declared" its distribution, we look to French law. "French law requires a formal shareholder vote on any distribution." Pl.Br. at 3. By implication, any vote or resolution before the formal shareholder vote is non-binding and creates no debtor-creditor relationship. Here, Pittway's May 23 vote was non-binding. In fact, it was analogous to Murine's December 15 vote. The difference between the two is that the Pittway vote was implicitly non-binding, whereas the Murine vote, with its attached resolution, was explicitly non-binding. That difference is immaterial. The Valois shareholders did not vote in favor of the distribution until June 28, 1984, which means they did not make the Pittway vote binding until that date. In turn, that means they did not "declare" a distribution until then. Because they made their declaration after the effective date of the Internal Revenue Code amendments, the amendments apply, unless Pittway can take advantage of the § 54(d)(3) exception, to which we now turn.

### C. The § 54(d)(3) Issue

■ Recalling the language of § 54(d)(3), it provides that "[t]he amendments made by subsection (a) do not apply to any distribution before January 1, 1985, to an 80–percent corporate shareholder if the basis of the property distributed is determined under section 301(d)(2)." Here, the issue is whether the basis of Valois' distribution is determined under § 301(d)(2).

Section 301(d)(2) provides that "[t]he basis of property received in a distribution to which subsection (a) applies shall be—corporate distributees.—if the shareholder is a corporation, unless paragraph (3) applies, whichever of the following is the lesser. . . ." Paragraph (3) concerns "[f]oreign corporate distributees." Paragraph (4), however, concerns "[c]ertain corporate distributees of [a] foreign corporation." That paragraph, paragraph (4), provides that "[i]n the case of property described in subparagraph (C) of subsection (b)(1), the basis shall be determined by substituting the amount determined under such paragraph (C) for the amount described in paragraph (2)." Finally, subparagraph (C) provides that "if the shareholder is a corporation and the distributing corporation is a foreign corporation, the amount taken into account with respect to property . . . shall be the fair market value of such property. . . ."

In this case, because the shareholder, Pittway, is a corporation, and the distributing corporation, Valois, is a foreign corporation, the basis of Valois' distribution is determined under § 301(d)(4).

Yet does § 54(d)(3)'s reference to § 301(d)(2) include an implicit reference to § 301(d)(4)? Perhaps it does because § 301(d)(2) applies "unless paragraph (3) applies," not unless paragraphs (3) or (4) apply. Further, paragraph (4) provides for "substituting" amounts determined under subparagraph (C) for those determined under paragraph (2). On the other hand, although paragraph (2) references paragraph (3) without referencing paragraph (4), there is no other ground for reading paragraphs (3) and (4) as having dissimilar integrity and force. Both are important exceptions to the general rule. Further, paragraph (4) calls for substituting amounts, not determinations, and § 54(d)(3) expresses concern only over where bases are determined. Further still, as the government argues, the 80 percent shareholder threshold has greater significance in the context of domestic-to-domestic distributions than foreign-to-domestic ones. We find this "other hand" more persuasive and hold that § 54(d)(3)'s reference to § 301(d)(2) does not include an implicit reference to § 301(d)(4).

### III. Conclusion

Therefore, for the reasons discussed above, we deny Pittway's motion for summary judg-

ment and grant the government's motion for judgment on the pleadings.